## Abraham W. Fuller *et al. versus* Abraham A Dame.

An agreement between D. and F. recites, that D. is the owner of land which would be enhanced in value if the Boston and Worcester Rail Road Corporation should establish their depot on certain flats, and that in order to procure the corporation to make such location of the depot, it is necessary to form a joint stock company to purchase the flats and give a portion thereof to the rail road corporation for the depot, and that F. has agreed to aid in getting up such a company and in causing the rail road corporation to fix its depot on the flats, it being understood that he is of opinion that the rail road corporation, with a view to the public good and the interest of its stockholders, ought to have its depot there ; and D. agrees to make F. a pecuniary compensation, so soon as the depot shall be located on the place specified.   A company was accordingly formed and incorporated, with power to purchase and hold the flats and to give a portion thereof to the rail road corporation as an inducement to establish the depot thereon, and an agreement was made between the two corporations by which the depot was located on the flats.   F. was a member of the rail road corporation at the time when he made the agreement with D., and subsequently became a member of the joint stock company.   This agreement was known only to the parties and the subscribing witnesses, though there was no stipulation that it should be kept secret.   It was *held*, that this agreement was contrary to public policy and to open, upright and fair dealing, because it tended injuriously to affect the public interest in having the fittest location of the depot, and the interests of the two corporations, and consequently it was invalid.

Assumpsit by the indorsees against the maker of a promissory note, dated the 1st of October, 1832, for $9600, payable

n three years from date, to Henry H. Fuller or his order, and by him indorsed to the plaintiffs. Trial before *Shaw* C. J.

It was in evidence, that at the time when the note was made, the promisor and promisee entered into the following agreement, of the same date with the note, in the presence of George Morey and Nathaniel R. Cobb, who were subscribing witnesses : —

" This agreement, between Abraham A. Dame, of Boston, and Henry H. Fuller, of said Boston, witnesseth, that whereas said Dame is the owner of a large tract of land and flats situated on Sea street, and between Sea street and Front street, in said Boston, which land and flats will be greatly enhanced in value by causing the Worcester Rail Road to locate one of its places of principal deposit eastwardly of Front street, and between said Front street and Sea street : And whereas, in order to procure said Boston and Worcester Rail Road Corporation to locate its place of deposit between said streets, it is ascertained to be necessary to form an association, who shall pay to said corporation a large sum of money and furnish a large tract of land for such place of deposit, to be given to said corporation, besides other donations to be furnished to said corporation ; and to provide and raise said money and land and donations, it is necessary to form a large company to purchase the flats and land between said Sea and Front streets, to be held as joint stock, and laid out in due form and shape for sale : And whereas said Fuller has agreed with said Dame, that he, said Fuller, will aid in getting up such a company, and in causing said rail road corporation to fix its termination and its principal place of deposit between said streets ; it being understood that said Fuller is of opinion, that said rail road ought, from a view to the public good and the good of the stockholders therein, to enter the city at the southerly part thereof, and to have its principal place of deposit as above expressed : Now, therefore, it is agreed, that a certain promissory note, dated this day, and signed by said Dame, payable to said Fuller, for nine thousand and six hundred dollars, payable in three years, and now lodged with Nathaniel R. Cobb and George Morey, both of said Boston, shall be delivered to said Fuller by said Cobb and Morey, or the surviver of them, so soon as said

Boston and Worcester Rail Road Corpoiation shall have made and located the principal depository for merchandise, of said rail road, at some place between said Sea street and Front street ; which note, being so delivered to said Fuller, shall be his property, and shall be paid to him and recoverable by him, as justly due and owing to him, according to its tenor. It is agreed Mr. Cobb may hold the contract and the note."

The note and the agreement were placed in the custody of Mr. Cobb and Mr. Morey, and by consent of all parties, were to be held by Mr. Cobb.

At or about the same time, the sum of $400 in cash was paid by Mr. Dame to Mr. Fuller, on the same account.

Some time after this transaction, Cobb died ; and in No vember, 1835, his administrator put the note into the hands of Mr. Morey. It was not then indorsed. Mr. Fuller demanded of Mr. Morey the delivery of it ; Mr. Dame objected, on the ground that it was held upon condition, and the condition had not been complied with. Mr. Moiey, knowing that the note could not go into the hands of an indorsee, except as a note overdue and subject to any defence which the maker might have against the promisee, and intending to leave the parties to their legal rights, delivered it to Mr. Fuller ; soon after which this action was commenced.

Under these circumstances, the defendant said that the same defence might be made against the plaintiffs as might have been made against the promisee, and that the note and the agreement were to be taken as parts of one and the same transaction ; and thereupon he took these grounds of defence : —

1. That it was a condition precedent to a delivery of the note, and of course to a recovery upon it, that the rail road corporation should have made and located their principal depository for merchandise, at some place between Sea street and Front street ; and that at the times when the note was delivered, and when this action was brought, no such depository had been so made and located.

2. That there was no legal and sufficient consideration to support the promise.

3. That the object of the agreement was to influence the decision of a question of public convenience and accommodation, in which the community had an interest to have the best

location of the rail road ; that a private agreement to aid in establishing a particular location, to the exclusion of others, was contrary to public policy ; and that a promise to pay money for such aid was invalid.

4. That the agreement contemplated the establishment of a large joint stock company with corporate powers, of which Mr Fuller was to become a member ; and that a separate agreement, for a pecuniary consideration, not known to other members and stockholders, to induce them to become members and to influence their acts and decisions, had a tendency to mislead them, and so was contrary to public policy, and void.

In reference to these several grounds of defence, it was proved, that a company had been formed and incorporated, called the South Cove Corporation, for the purpose of partially filling up the flats between Sea street and Front street ; that by the votes of that corporation and of the rail road corporation, and by contracts made between them, it was stipulated that the principal depositories of the rail road corporation, both for merchandise and for passengers, should be established on land between those two streets within the South Cove ; and it was considered by the parties, that these depositories were definitely located, so far as it could be done by votes and contracts ; but no deed of the land had yet been given by the South Cove Corporation to the rail road corporation ; the former, however, were ready to execute such deed whenever required, the delay having been by mutual consent, and for their own convenience. A place had been appropriated within the cove, for a principal depository of merchandise, and a wharf had been erected, on which it was intended to erect warehouses, sheds and yards for such a depository, but no buildings were yet erected thereon. Preparations had been made, and the work was in progress, for laying out, grading, and preparing tracks for rail roads, within the cove, but no rails had yet been laid down east of Front street, nor any place east of Front street been yet used as a depository of merchandise. The rail road corporation had a depository for that purpose, at a place west of Front street ; which, however, they deemed temporary. The location of the depot at the place appropriated for it within the cove, was considered by the engineer of the rail road corpora-

Fuller      tion to be a favorable one, and he advised to the adoption of it
            in preference to any other.

In regard to other parts of the case, it was proved that the defendant, either by himself or with others, was a large proprietor of flats and wharves situated near the South Cove ; that about a year before the trial he sold that estate at a very great advance upon the cost ; that about the time when the above agreement was entered into and before the location of the depot was fixed upon, Mr. Morey conversed with the defendant and stated that if the cove could be filled, it would be a good place, but it would require that a company should be got up to do it, and that somebody must go forward and aid in organizing a company ; and he believed he mentioned Mr. Fuller as a suitable person.  There was supposed to be some diversity of interest between the proprietors on Sea street, and those on Front street, and he thought Mr. Fuller would be acceptable to the latter.  He knew nothing of the particular agreement above set forth, until he was called upon to witness it and take the custody of the note.

Mr. Fuller was a proprietor of shares in the rail road corporation at the time of making the agreement, and ceased to be a proprietor in August, 1833.  He took about twenty shares in the South Cove Corporation, but was not among the early subscribers.  Both he and the defendant were members of the legal profession.

The plaintiffs proposed to offer proof, that in pursuance of the agreement Mr Fuller did perform valuable and efficient services ; and the defendant proposed to prove that Mr. Fuller had not performed services in any degree adequate to a compensation of $ 10,000 ; but such evidence was considered to be immaterial and irrelevant.

A nonsuit or a default was to be entered, or a new trial ordered, as the Court should deem proper.

*Jan. 18th, 1837, at Boston.*      *Farley* and *Choate*, for the plaintiffs, argued, among other things, that the agreement between Mr. Fuller and the defendant was not against public policy ; that the agreement recites, that Mr. Fuller was of opinion that the rail road ought to terminate on the lands of the South Cove Corporation, and this fact, therefore, the defendant could not controvert ; that the

law would intend that the aid of Mr. Fuller in procuring the depot to be located there, was to be rendered in a proper and lawful manner ; that it would be mutually beneficial to the South Cove Corporation to make, and to the rail road corporation to receive, the proposed donations ; that the rail road corporation was a private corporation, invested with authority to make its own selection of a place for a depot, and in doing so it might lawfully take into consideration the comparative expense of different locations ; that, however, the interests of the corporation in this respect were identical with those of the public ; and further, that the act incorporating the South Cove Corporation, in § 6, expressly authorized the precise thing to be done which Mr. Fuller undertook to do, and this shows that it was not against public policy ; that it was competent and fair for the defendant to enlist other persons to unite with him in procuring the rail road depot to be established on the South Cove, and, if so, it was competent to him to employ an agent for the same purpose ; that Mr. Fuller never pretended to act otherwise than as an agent with compensation, neither did he engage to say or do any thing to mislead the public, in getting up the South Cove association ; that there was no understanding between him and the defendant, that the agreement should be kept secret ; that it was not known that Mr. Fuller was to be a stockholder in the South Cove Corporation, and he was in fact one of the last subscribers for shares, so that he was not a decoy duck to induce others to subscribe ; that as a member of the rail road corporation he had no voice in selecting the place for a depot, but merely in choosing directors ; and that although he was a member of the legislature, yet at the time of making the agreement that body had adjourned and could not be reassembled except by an extraordinary act of the governor, and if Mr. Fuller had contracted to obtain an act of incorporation for the South Cove association, it was in reference to a future legislature of which he would not be and was not a member. *Richardson* v. *Mellish*, 2 Bingh. 242 ; *Lampleigh* v. *Brathwait*, Hob. 105 *b* ; Chit. Contr. 217 ; *Harrington* v. *Kloprogge*, 2 Chit. Rep. 475.

*Fletcher* and *Mann*, for the defendant, insisted that the contract was against public policy ; *Chesterfield* v. *Jansen*, 1 A*t*k.

352 ; *S. C.* 2 Ves. Sen. 125 ; 1 Story on Eq. 262 ; *Collins Blantern*, 2 Wils. 347 : —

1. Because it was founded on a violation of a public trust and confidence, Mr. Fuller being a member of the legislature at the time when the contract was made ; 1 Story on Eq. 291 ; *Cooth* v. *Jackson*, 6 Ves. 12 ; *Pingry* v. *Washburn*, 1 Aikens, 264 ; *Swayze* v. *Hull*, 3 Halsted, 54 ; *Jones* v. *Randall*, 1 Cowp. 39 ; —

2. Because the object was to procure a grant, in the nature of an office ; *Meredith* v. *Ladd*, 2 N. Hamp. R. 517 ; 1 Story on Eq. 292, 293 ; —

3. Because it was a promise to pay money for influencing a public officer, the rail road corporation being in effect a public officer, and it being their duty to select a depot in reference to public convenience and accommodation ; —

4. Because it was an agreement for the exertion of a secret influence and power over third persons, inasmuch as any representation made or opinion expressed by Mr. Fuller to the rail road corporation, would have the greater effect from its being supposed that he was acting as a stockholder, having a common interest with the other stockholders, when in fact he was acting under this agreement ; and in this respect there were seven classes of analogous cases : — 1. Of contracts for procuring a will to be made in favor of the promisor ; *Debenham* v. *Ox*, 1 Ves. sen. 276 ; 1 Story on Eq. 266 ; — 2. Of puffers at auctions and agreements not to bid in competition ; 1 Story on Eq. 290 ; 2 Kent's Com. (1st ed.) 426 ; *Gulick* v. *Bailey*, 5 Halsted, 91 ; *Thompson* v. *Davies*, 13 Johns. R. 112 ; — 3. Of poundage for recommending customers to buy ; *Hughes* v. *Staham*, 4 Barn. & Cressw. 187 ; *Wyburd* v. *Stanton*, 4 Esp. 179 ; — 4. Of marriage brocage bonds ; Story on Eq. 267 to 271 ; *Keat* v. *Allen*, 2 Vern. 588 ; *Boynton* v. *Hubbard*, 7 Mass. R. 118 ; — 5. Of *post obit* bonds ; *Boynton* v. *Hubbard*, 7 Mass. R. 119 ; 1 Story on Eq. 334 ; — 6. Of compositions with creditors and secret preferences ; *Cockshott* v. *Bennett*, 2 T. R. 763 ; Chit. Cont. 225, 226 ; *Wood* v. *Roberts*, 2 Stark. Rep. 417 ; *Jackson* v. *Duchaire*, 3 T. R. 551 ; 1 Story on Eq. 370, 371 ; — and 7. Of concealment in representations to underwriters.

Shaw C. J. delivered the opinion of the Court. The plaintiffs bring their action as indorsees of a promissory note ; but as they took the note by indorsement after it had become due, they are presumed to have taken it with notice of the consideration, and of all the circumstances under which it was given ; it is open, therefore, to the same defence, as if the suit were prosecuted in the name of the promisee.

Fuller
v.
Dame.

March 13th
1837,
at Boston.

It appears by the case reported, that the note was not originally delivered to the promisee, but to third persons, to hold and deliver the same to the promisee, upon a condition expressed in an agreement of even date with the note and signed by the parties. The agreement and the note, therefore, being made at the same time, and relating to the same subject, are to be taken together, as different parts of one and the same transaction, to the same effect as if the stipulations in both had been incorporated into one instrument. This agreement states the consideration upon which the note was made, and discloses the object of the parties and the purposes of the transaction. Several grounds of defence were taken to this action :

First, that the note was given without any legal consideration ;

Second, that it was made deliverable to the promisee, and payable, upon a condition precedent, to wit, the actual location and making of the principal depository of the Worcester Rail Road Corporation, at the place desired and designated, which condition, it was insisted, had not happened, at the time of the commencement of this action ; and

Third, that the object, tendency and effect of this contract, was to induce the promisee, or other persons to be employed and called into action by him, to exert an influence upon the decision of questions affecting both public and private rights, with a view to considerations, other than those affecting those rights ; that such contracts tend injuriously to affect the rights and interests of third persons, are contrary to public policy, and so inoperative and void in law.

Upon the last ground, the Court are of opinion that this contract was obviously contrary to public policy, to open, upright and fair dealing, and cannot, therefore, in point of law, be supported. At the time when this contract was entered into, the

Boston and Worcester Rail Road Corporation had been incorporated, with ample powers ; the *termini* of the road were not definitively fixed, otherwise than at Worcester and Boston, but at no particular places within those towns respectively. At that time Mr. Fuller was a proprietor in the rail road corporation, and he was then a member of the Massachusetts legislature, though he was not a member the ensuing year, when the South Cove company was incorporated. After the agreement, the South Cove company was incorporated, with a large capital, and Mr. Fuller became a member and stockholder in that company.

We think, in the first place, that this cannot be regarded as a contract and payment for professional services. Nothing in the terms of the agreement, or in the nature of the objects to be accomplished, indicates that the promisee was to act as the advocate and counsel, or as the accredited agent and attorney of Mr. Dame, in procuring any of the acts done, upon the accomplishment of which the money was to be paid. The acts to be done were to get up a large joint stock company to procure the Worcester Rail Road Corporation, either by the aid of such a company or otherwise, to fix its place of termination and deposit at the place desired by Mr. Dame. The interest of Mr. Dame, to be subserved by this location, was incidental and collateral, and not in any sense the object or purpose of so fixing that location, so far as either the rail road corporation or the South Cove Corporation were concerned. It was not a case, therefore, in which Mr. Dame had any right, or any occasion, to be heard by counsel, or to be represented by a known and accredited agent. The fullest and freest latitude ought to be given, for all persons interested, in matters of property, character, and generally in their social rights, to be heard by their counsel, before public bodies, as well as before judicial tribunals, in all cases where those rights are drawn in question ; but then the fact appearing that persons do so act in a representative capacity and appear as counsel for others, prevents any injurious effects from such proceeding. Such counsel, agent or attorney is considered as standing in the place of his principal, governed solely by a regard to his interests, and his arguments and representations are weighed and considered accordingly.

Again ; the Court are of opinion, that this does not stand upon the ground, that the promise is void, because it was given to induce the person to whom it was made, to do an unlawful act. It is an undoubted principle of law, that where a promise is made to one, in consideration of doing an unlawful act, as to commit an assault, or practise a fraud on a third person, such promise is void in law. It was strongly pressed by the counsel for the plaintiffs, that when a contract is made in general terms, broad enough to include things lawful and unlawful, it shall be presumed that they intended those only which were lawful. For instance, if A should stipulate to procure and obtain from B a sum of money for the use of C, it might be obtained by a demand or a suit at law, which are lawful means, or by fraud or violence, which are unlawful. It should be presumed that the lawful and not the unlawful means, were intended. If this defence were placed solely upon the position, that this was a contract void on the ground of containing stipulations to do unlawful acts, this would be a cogent and perhaps an unanswerable argument in reply.

But this is not the true nature of the defence. The law goes further than merely to annul contracts, where the obvious and avowed purpose is to do or cause the doing of unlawful acts; it avoids contracts and promises made with a view to place one under wrong influences, those which offer him a temptation to do that which may injuriously affect the rights and interests of third persons. A person having property, and being of sound mind, may make a will in favor of whom he pleases. A common friend may lawfully represent to him, the expediency and fitness of making a bequest in favor of a particular individual and may repeat that representation, both in conversation and in writing. Writing letters at the request of another and for his benefit, would under ordinary circumstances, be a proper consideration for a promise of compensation. But any promise to pay another for soliciting a will in his favor, would be void. *Debenham* v. *Ox*, 1 Ves. sen. 276. A man might entertain a very sincere opinion, that a marriage between a certain gentleman of his acquaintance, and a lady of considerable fortune, would be highly beneficial and contribute to the happiness of both parties, and he might lawfully propose this to

one or both.   But any promise of reward made to him to in-
duce him to do this, or any promise made afterwards in con-
sideration of such service, would be void.

This is founded upon the general consideration of fitness and
expediency.   Such advice and solicitation, in whatever form
the agency may be exerted, are understood to be disinterested,
and to flow from a single regard to the interests of the parties.
They are lawful only so far as they are free and disinterested.
If such advice and solicitation, thus understood to be pure and
disinterested, may be justly offered from mercenary motives,
they would produce all the consequences of absolute misrepre-
sentation and falsehood.   It is understood to be the offer of
disinterested good offices, and the measure proposed, to be re-
commended, by the unbiased judgment of the person offering
it ; whereas, it is in fact an offer flowing from unavowed mo-
tives of pecuniary interest, and the recommendation is the
result of a judgment biased by a hope of a large reward.   If re-
wards might be taken in consideration of the exertion of direct
or indirect influence, either by the person acting under it, or
by others who should be influenced and moved by him, it would
destroy all confidence, it would lead to false and unfair repre-
sentations and dealings, and be productive of infinite mischief.

The case in question is, we think, clearly within the opera-
tion of this salutary principle.   Without considering other as-
pects of the contract, we are of opinion, that it was contrary
to public policy, and to upright and fair dealing, as it tended
injuriously to affect the public interest in establishing the fittest
and most suitable location for the termination of the Worcester
rail road, for the accommodation of the public travel ; 2. As it
affected the interests of the proprietors of the Worcester rail
road ; 3. As it affected the interests of the joint stock company
incorporated under the name of the South Cove Corporation.

The Boston and Worcester rail road was established for
public accommodation and convenience, in the transportation
of passengers and merchandise.   Like a county road, it was
in many respects a common highway.   It has been so held in
case of turnpike roads.   *Commonwealth* v. *Wilkinson*, 16 Pick.
175.   It may be said, that it was to be constructed and locat-
ed by the corporation.   True, as in case of a turnpike road,

ıt is constructed in the first instance at the expense of a private company of adventurers, under the sanction of the legislature, incorporated for that express purpose, and they are to be reimbursed by a toll, levied and regulated by law for their remuneration. The work is not the less a public work ; and the public accommodation ɛ the ultimate object. It is also true, that it was left to the corporation and the directors, to fix the termination and place of deposit. In doing this a confidence was reposed in them, acting as agents for the public, a confidence which, it seems, could be safely so reposed, when it is considered, that the interests of the corporation as a company of passenger and freight carriers for profit, was identical with the interests of those who were to be carried, and had goods to be carried, that is, with the public interest. This confidence, however, could only be safely so reposed under the belief that all the directors and members of the company should exercise their best and their unbiased judgment upon the question of such fitness, without being influenced by distinct and extraneous interests, having no connexion with the accommodation of the public or the interests of the company. Any attempt, therefore, to create and bring into efficient operation, such undue influence, has all the injurious effects of a fraud upon the public, by causing a question which ought to be decided with a sole and single regard to public interests, to be affected and controlled by considerations having no regard to such interests. It is no answer to say, that by the act of incorporation the executive authority was vested in a board of directors, and Mr. Fuller was not a director. He was a member of the company and might be chosen a director. He was an elector of the directors, and they were directly responsible to the stockholders. The immediate act of location was with the directors, but the efficient authority was with the members and stockholders of the corporation, who elect the directors. The election may depend upon the known views and opinions of candidates upon this very question of location. They had a right to his disinterested judgment and advice upon the question of location ; and this could not be exercised whilst he held and relied on a promise for a large sum of money, the payment of which depended upon the decision of this question by the directors

Nor is it any satisfactory answer to say, that when the agree ment was entered into, he had come to the opinion that the location in question was the best for the interests of the public, and for the interests of the corporation. That opinion might be changed by new views, and new offers; and besides, the terms, upon which this boon was to be obtained, was still an open question. But upon all these questions the influence of the promise of separate and distinct advantage, deprived him of the power of exercising a free, disinterested and unbiased judgment.

2. It was contrary to public policy, and the principles of fair dealing, as it affected the private interests of the two companies. Mr. Fuller was one of the original proprietors of the Worcester rail road. His associates had a right to believe, that in all his acts as such stockholder, in choosing directors, in framing by-laws, and doing other acts, pursuant to the powers of the corporation, he had a common, and in proportion to his shares, an equal interest, and they had a right to rely on his judgment, his recommendations of directors and other acts, with all the confidence inspired by such a belief. A contract assuring him separate and distinct advantages, operated to mislead and deceive them, and thus had a tendency to operate as a fraud upon them. It is not easy to distinguish this from the case of a composition deed, where ostensibly all the creditors stipulate to release the common debtor upon the payment of their debts at a certain rate of discount; any stipulation for a separate and distinct advantage, is held to be a fraud upon other creditors, and void. *Case* v. *Gerrish*, 15 Pick. 49.

3. The same considerations apply to the case of Mr. Fuller as a member and stockholder in the South Cove Corporation, by whose act, by contract with the Worcester Rail Road Corporation, the location of the depot was to be fixed. It is no objection to the force of this argument, that this company was not incorporated until after the agreement was made, and that Mr. Fuller did not at first become a member of it. It is obvious, that the establishment of such a company, was contemplated when the agreement was made, and that there was nothing in the agreement to prevent Mr. Fuller from becoming a member, as he in fact did. The members of this company

had a right to have the question, whether they should contract with the Worcester Rail Road Corporation and the terms on which they should so contract, settled and decided by a sole regard to the interests of that corporation as a company of owners, purchasers and adventurers.    Any influence from any quarter, created by the promise of a sum of money, to induce them so to contract, and to yield to particular terms, with a view to separate and extraneous interests, operated as a fraud upon them, and rendered such promise void.

If these principles are important to be observed in the ordinary intercourse of society, and in regard to the conduct of individuals in their important relations, such as wills and marriages, it seems to us *a fortiori* that they are required to be observed in the formation and conduct of associations, corporations and joint stock companies, where very large and important interests are confided and administered, where most important questions are decided, directly or indirectly, by the major vote of the associates, and where the judgment of each is, to a great degree, affected and influenced by the judgment and conduct of others.    It seems to us that the strictest good faith, and purity of intention and purpose are absolutely requisite.

We are aware that there is no stipulation in this contract, that it should be kept secret.    There is certainly no intimation that it should be disclosed to either of these companies, or otherwise made public.    The contract was of such a nature, that it would be likely to defeat its purpose to make it public , it is therefore reasonable to presume that it was not intended to be made public.    In point of fact, it does not appear that it was known to any one, but the parties interested and the depositaries of the note and agreement, until after the object was accomplished.    But it is enough for the purposes of the present argument, which goes to establish a general rule, that such agreement might be kept secret, from all those on whom the influence was intended to be exerted, and that in general it would be for the interest of the parties to keep it secret, and thus that it would be productive of all the injurious consequences alluded to.

If one stockholder in a joint stock company or one not a

Fuller
v.
Dame.

stockholder, can be furnished with the means of paying a bonus or premium upon shares, paying the differences between ostensible sales of shares and the real value, he may create a fictitious value to shares, promote a false confidence in the stability and measures of such company, and thus produce injurious consequences to a great extent.

It is obvious, that if one large landholder may make a valid conditional promise to pay a large sum of money to a stockholder, or influential citizen, on condition that a work of great public improvement may be so fixed as to enhance the value of his estate, all other great landholders may make like promises, on similar conditions, and great public works, which should be conducted with a view to the public interest, and to the just rights of those who make advances for the public benefit, would be in danger of being overlooked, and sacrificed in a mercenary conflict of separate, local and private interests.

*Plaintiffs nonsuit.*