KERNION et al. v. HILLS et al.

The usage and practice under a statute may be resorted to in case of doubtful meaning, as a means for ascertaining the intention of the law-maker.

Under the statutes of 20th March, 1816, 6th March, 1818, and 6th March, 1819, regulating the inspection of tobacco in New Orleans, it is the duty of the inspectors to furnish samples, properly labelled, of every hogshead of tobacco inspected by them; and for doing so, they can make no charge beyond the amount allowed by the 1st section of the act of 1819, for each hogshead inspected by them.

Where one, compelled to employ a public officer, to avoid delay in his business, promises to pay an extra charge demanded for certain services, but accompanies the promise with a declaration that he does not acknowledge the legality of the charge and will immediately sue to recover back the amount, the promise is not binding, and changes in no respect the rights of the parties.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

*G. B. Duncan,* for the appellants. The laws on the subject of the inspection of tobacco do not require that the inspectors shall make samples. Bullard & Curry's Dig. 508–10. The amount claimed is not for services "under color of office," but for extra-labor rendered by the plaintiffs as individuals. See *Hills* v. *Kernion,* 7 Rob. 522.

*R. H. Chinn,* on the same side.

*H. H. Strawbridge,* for the defendants. The services for which the extracharge claimed by the plaintiffs was made, was part of the duty of inspection. Usage under the law establishes this. Civ. Code, arts. 195, 1960, 1961. *Halsey* v. *Brown,* 3 Day, 346. *Consuetudo est altera lex.* 4 Coke, 21.

The judgment of the court was pronounced by

SLIDELL, J. This is a suit brought by six individuals, who formerly held the office of tobacco inspectors in New Orleans, to recover from the defendants,

CITY BANK
v.
BANKS.

KERNION
v.
HILLS.

commission merchants, the sum of $1310, as a compensation for making, tying up, and labelling samples of certain hogsheads of tobacco, inspected by them in their official capacity. The charge for the particular services above stated, and which were rendered in the years 1842 and 1843, being at the rate of forty cents per hogshead, being an extra charge beyond the sixty cents, the inspection fees allowed by statute. The claim is resisted on the ground that, under the inspection laws, the inspectors were authorized to receive for the inspection of tobacco, " sixty cents and no more," and that sampling and labelling are included in the duty of inspection. The plaintiffs, on the other hand, contending that it is an extra service, not comprehended in their official duty.

The statutes regulating the inspection of tobacco, were passed in the years 1816, 1818 and 1819. The amount of charge and the duties prescribed were somewhat changed from time to time by these statutes, but in none of them is the specific duty of sampling and labelling enumerated. Hence the origin of this controversy. Much testimony was taken as to the mode in which the duty of inspection was performed, and compensation paid, during a long series of years. From this testimony, which is given by respectable individuals who had been engaged for a long time in the tobacco trade in this city, and also in the States of Virginia and Kentucky, it appears that, during a long series of years previous to the year 1836, it was the practice in New Orleans for tobacco inspectors to furnish samples without any extra charge ; and this service was considered as embraced within the duty of tobacco inspection. The witnesses also stated that in Virginia, a tobacco growing State, sampling formed part of the process and duty of inspection, and was performed without extra charge, although not expressly required by statute ; and such also was the uniform usage in Kentucky. This testimony is, in our opinion, entitled to great consideration.

The object of the inspection laws was to promote the interests of commerce, by preventing frauds, by enabling purchasers by official information to judge of the kind and quality of the article, and by facilitating sales. This object was well worthy of legislative attention, in a State whose capital is a commercial dépôt for the important and daily increasing commerce of the great valley of the Mississippi and its tributaries. Such being the motive of the law-giver, it is our duty so to interpret these statutes as to give them their entire effect, so far as we can do so without violating their language ; and in this duty of interpretation we may with great propriety resort to the usage and practice under these statutes. Si de interpretatione legis quaeratur, in primis inspiciendum est, quo jure civitas retro in ejusmodi casibus usa fuisset ; optima enim est legum interpres consuetudo. L. 37, ff de Legibus. Domat, lib. 1, sect. 2, § 19. This rule of the Roman law, founded on manifest good sense, has commended itself to, and become a part of the jurisprudence of every country. The rules of interpreting statutes are necessarily in many respects analagous to those adopted in the construction of contracts, and our Code expressly declares that the obligation of contracts extends not only to what is expressly stipulated, but also to every thing that by law, equity, or custom, is considered as incidental to the particular contract, or necessary to carry it into effect. Art. 1897.

In addition to the above consideration, there is an expression in the statute which is pregnant with much meaning. The law in defining the fees of inspectors says, they shall receive sixty cents and no more. Now if, under a fair interpretation of the law with reference to all its parts, it could be said that sampling is not required, still the words " no more" might well be considered as an

inhibition upon inspectors to take more even for services not prescribed. The argument that the charge is made, not by the inspector in his official capacity for official services, but by the individual in his individual capacity for individual services, is specious, but involves an unsafe doctrine. It seems to us very dangerous, when a law prescribes for the public officer certain fees *and no more*, to draw distinctions between the individual and the public officer, except, at any rate, when such a distinction is indispensable to do justice between the parties, by reason of services which it is clearly impossible to class as official, and where his public character has given the claimant no advantage over the citizen in making the bargain.

It is said that the inspectors notified the defendants that they would give samples if required, but that they would make a charge for it, and that the defendants required the plaintiffs to do so, and said they would pay the extra charge. This is true; but at the same time it is evident that the defendants, who were compelled by law to employ the plaintiffs to inspect their tobacco, did this in order not to be delayed in their business, and they coupled with the promise to pay the extra charge the express declaration that, they did not recognise its legality, and would immediately bring suit to recover it back. Now, under such circumstances, the promise was not binding, and in nowise changed the legal position of the parties; for, if the plaintiffs had no right, as we have seen, to make the extra charge, the promise was without a lawful consideration, and was in fact against public policy. *Judgment affirmed.*