### SUSSMAN v. PORTER.

(Circuit Court, D. New Jersey. May 5, 1905.)

CONTRACT—PUBLIC POLICY.
> An agreement to procure the consent of property owners for the construction and maintenance of a trolley line in front of their properties, and also to obtain a municipal franchise to operate such trolley line for a fee contingent upon success, *held* to be contrary to public policy, and void, and that no part of the stipulated compensation can be recovered.
>
> [Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 587.]

(Syllabus by the Court.)

On Demurrer to Declaration.

Patterson & Rhome, for plaintiff.
John M. Enright, for defendant.

CROSS, District Judge. The defendant has demurred to the first count of the declaration, which is founded upon a contract therein

set forth at length, dated December 31, 1902, between James E. Degnan, of the first part, and Charles A. Porter, the defendant, of the second part, which contract, it is duly averred, has been assigned by said Degnan to Arthur Sussman, the plaintiff. The contract recited that Porter was a stockholder and director of the Monmouth Electric Company, a corporation of the state of New Jersey, owning and operating a street railway in the town of Red Bank, in said county, which it was desirous of extending through certain streets in Long Branch, in said county, as particularly set forth in said contract; that Degnan was willing to undertake the labor incident to securing the requisite rights of way of the abutting property owners along such proposed extension, and the requisite municipal franchise, and to pay and discharge all expenses and costs in connection therewith (except as thereinafter provided), upon the terms and conditions thereinafter set forth; that in consideration of the benefits that would accrue to Porter by reason of the right to construct such proposed extension he was willing to pay the sum of money and deliver the securities thereinafter mentioned to Degnan "in return for the municipal consent as aforesaid and property owners' consents," and thereupon said Degnan agreed "to obtain the municipal consent of the Long Branch Commission to the construction, operation, and maintenance of such proposed extension or railway," and all things connected therewith and incident thereto, and to pay and discharge all the expenses in connection with the obtaining of such consents of the property owners and municipal authorities (except such charges and expenses as might be imposed on said company by the terms of the ordinance granting such consent) for the price or sum of $5,000 in cash and $5,000 in 4 per cent. bonds of said railway company, secured by a first mortgage upon its property, to be paid as follows: $1,000 upon the execution of the agreement, $4,000 as the party of the first part might require the same for expenses in the performance of the contract, and as he might from time to time demand in writing from the party of the second part, and $5,000 in bonds as aforesaid, when the said municipal franchises, together with the necessary consents of property owners, were secured and accepted by said company. Then follow certain provisions exempting Degnan from any obligation to obtain the consent of the Central Railroad Company of New Jersey or the Atlantic Coast Electric Company to a grade crossing, unless the same could be done without expense, and an agreement on the part of the defendant to pay such additional sums as might be necessary to purchase real estate or personal property, if such purchase should become necessary in carrying out the contract. The contract further provided that, in case Degnan failed to secure the requisite rights of the property owners and municipal authority as above provided for all and every extensions, franchises, and consents, he should render forthwith a just and true account of all the disbursements he might have made from the moneys paid and to be paid to him by virtue of the contract, and should forthwith pay to the party of the second part the balance of any money so paid to him, whereupon the party of

the second part was to be released and discharged from the payment of any other expenses and charges for the services of the party of the first part or otherwise; provided, however, that, if the consummation of the contract were prevented or interfered with by the party of the second part, the party of the first part should be entitled to receive a reasonable sum for his services in the premises. It was further stipulated in the contract that the aforesaid consents should be obtained on or before April 1, 1903, unless prevented by litigation or an extension should be granted by the parties thereto.

But one ground of demurrer is assigned, namely, "that the contract set forth in plaintiff's declaration and upon which his right to recover is based is illegal, contrary to public policy, and void, among other things, in that said contract engages to reward plaintiff's assignor for services in securing a municipal franchise from the Long Branch Commission."

The declaration avers, among other things, that Degnan secured the rights of way of the abutting property owners and the aforesaid municipal franchise, and that he paid all the expenses and costs provided in said agreement before April 1, 1903; and in particular it avers that said Degnan obtained the municipal consent of the Long Branch Commission to the construction, operation, and maintenance of said proposed extension of railway; and that in consideration of the said services, disbursements, acts, and conduct of the said Degnan the said defendant agreed to pay, and was liable to pay the said Degnan, the aforesaid sum of $5,000 in cash and $5,000 in bonds in the manner above stated. A further averment in the declaration is that "the said Long Branch Commission did, by reason of the labor and efforts of the said James E. Degnan, undertaken and done in consideration of said contract, and the securing and filing of said requisite rights of way by him, cause its municipal consent to be given in and by an ordinance duly and legally adopted and published by said commission to the construction and operation and maintenance of said extension of railway," which was accepted by said the Monmouth Electric Company.

The first count in the declaration is based entirely upon the agreement above summarized, which provided that for obtaining certain consents of property owners and a municipal franchise to be granted by ordinance by a municipal corporation known as the Long Branch Commission, Degnan was to be paid by the defendant, $1,000 in cash, $4,000 for expenses as needed and demanded by him in writing, and $5,000 in bonds, contingent upon his procuring the municipal franchise and necessary consents; and that in case of failure to procure the same he was forthwith to render an account of all his disbursements from the moneys paid to him under the contract, and immediately pay over to the defendant the balance of any such money. The compensation provided in the contract is demanded in the suit for having procured the consents of the property owners and the municipal franchise, and a careful inspection of the contract shows that Degnan was to do nothing else to be entitled to it. Other matters, such as the price of property, real

or personal, which it might be necessary to purchase, and such money as might be necessary to obtain a railroad crossing, and as might be fixed by the commission as a condition of granting the franchise, were to be paid in addition to the stipulated compensation. Counsel for the defendant contends that the facts appearing in the first count of the declaration bring the case within the authorities which hold that contracts for services in obtaining legislation, government contracts, or otherwise influencing governmental action, are contrary to public policy, and void. In Providence Tool Company v. Norris, 2 Wall. 45, 17 L. Ed. 868, the court holds that an agreement for compensation for procuring a contract from the government to furnish its supplies is against public policy, and cannot be enforced by the courts. Justice Field, in delivering the opinion of the court, says:

"The principle which determines the invalidity of the agreement in question has been a. serted in a great variety of cases. It has been asserted in cases relating to agreements for compensation to procure legislation. These have uniformly been held invalid, and the decisions have not turned upon the question whether improper influences were attempted or used, but upon the corrupting tendency of the agreement. Legislation should be solely for the public good. * * * Agreements for compensation contingent upon success suggest the use of sinister and corrupt means for the accomplishment of the end desired. The law meets the suggestion of evil, and strikes down the contract from its inception. * * * It is sufficient to observe generally that all agreements for pecuniary consideration to control the business operations of the government, or the regular administration of justice, or the appointments to public office, or the ordinary course of legislation are void as against public policy without reference to the question whether improper means are contemplated or used in their execution."

It is not, therefore, a question whether improper influences were contemplated or used or not, but the contract is vitiated from the fact that it provides for the procurement of legislation, whether municipal or otherwise. The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of the courts of the country. See Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 261, 26 L. Ed. 539, and Marshall v. Bal. & O. R. R. Co., 16 How. 314, 14 L. Ed. 953.

In Crichfield v. Bermudez Asphalt Paving Co., 174 Ill. 466, 51 N. E. 552, 42 L. R. A. 347, and Bermudez Asphalt Pav. Co. v. Critchfield, 62 Ill. App. 221, it is held that employment to procure the passage of ordinances for paving streets at a compensation, which, except for a monthly allowance, is contingent upon success in obtaining the necessary ordinances and in securing the paving contracts consequent thereon, is void on grounds of public policy; and in the course of the opinion it is said an ordinance passed by the common council, providing for the paving of a public street, is a species of legislation as much as an act passed by the Legislature, though the body passing it is subordinate in its character, and is created by the Legislature itself. The rule, therefore, which makes void a contract for a contingent compensation for obtaining legislation applies as well to the common council of a city as to the Legislature of a state. The doctrine laid down

in Tool Company v. Norris, ubi supra, is adopted in the opinion and a large number of additional cases cited.

In the case of Clippinger v. Hepbaugh, 5 Watts & S. 315, 40 Am. Dec. 519, it is said of a similar contract that it matters not that nothing improper was done or was expected to be done by the plaintiff; it is enough that such is the tendency of the contract, and that it is contrary to sound morality and public policy leading necessarily in the hands of designing and corrupt men to improper tampering with members, and the use of extraneous secret influence over an important branch of the government. It may not corrupt all; but if it corrupts, or tends to corrupt, some, or if it deceives, or tends to deceive or mislead, some, that is sufficient to stamp its character with the seal of reprobation before a judicial tribunal. The following cases are of the same general character: Coquillard's Adm'r v. Bearss, 21 Ind. 482, 83 Am. Dec. 362; Foltz v. Cogswell, 86 Cal. 542, 25 Pac. 60; Gil v. Williams, 12 La. Ann. 219, 68 Am. Dec. 767; Houlton v. Dunn, 60 Minn. 26, 61 N. W. 898, 30 L. R. A. 737, 51 Am. St. Rep. 493; Mills v. Mills, 36 Barb. 474. And in Weed v. Black, 2 MacArthur, 268, 29 Am. Rep. 618, the court uses the following language: "If the terms of the contract be broad enough to cover services of any kind, whether secret or open, honest or dishonest, the law pronounces a ban upon the paper itself;" while in Rose v. Truax, 21 Barb. 361, where the agreement was to use influence, efforts, and labor in procuring the passage of a law by the Legislature, the court held the agreement void as against public policy, and that, as it was entire, no recovery could be had even for legitimate services thereunder.

Cases to the above effect might be cited indefinitely, and very many are cited in the cases already referred to. It is clearly deducible from them that a contract to procure or influence legislation is bad, whatever the intention of the parties may have been, and whether the influences actually exerted thereunder were honest or corrupt. It is the temptation to corruption and dishonesty which the courts will not tolerate. It will be noticed, too, that some of the cases cited lay great stress upon the fact that a contingent fee is dependent upon the success of the service. The rule of law in all these and similar cases is that the court will not aid either party to the contract, but each will be left in the position in which he has placed himself. Judicial aid will not be given to either party to a corrupt agreement. This is not because the court desires to favor either party, but because the agreement is corrupt and tainted. In the case at bar an all-important part of the agreement was the procurement of municipal legislation. This was the service stipulated for, and this was the service agreed to be rendered by the plaintiff's assignor. What he was to do in furtherance of the agreement, or how it was to be done, is not stated in terms, but under the cases that is a matter of indifference; we are not compelled to read between the lines of the contract to spell out its methods, or ascertain how it was to be carried out, although it may well be that an itemized account of how the moneys were expended that were advanced for "expenses" could tell the story

in no uncertain terms. In this connection it must also be borne in mind that the payment of the stipulated fee was contingent upon success, and that, if failure ensued, Degnan was to account for his expenses, but, if he succeeded, he could retain all the money, and no questions would be asked. Under the circumstances disclosed by the declaration, we are compelled to hold that the agreement is void.

It is contended in behalf of the plaintiff, however, that, even if the part of the contract just discussed cannot be enforced, the contract is nevertheless severable, and that as $5,000 of the consideration was to be paid to the plaintiff's assignor upon demand in writing, and as such demand has been made, and the sum has not been paid, he in entitled to recover, in any event, to this extent. It is manifest, however, that such is not the case. The contract is entire, and the consideration is entire. The contract was to procure consents and municipal legislation for a fixed compensation. The plaintiff's assignor was as much bound to do the one thing as the other—that is to say, he was bound to do both—and the defendant bound himself to pay the stipulated price for the services thus to be rendered. He did not bind himself to pay $5,000, or any other sum, for the property owners' consents, and to deliver the bonds, or any part of them, or any other stipulated consideration, for procuring the municipal franchise. If the agreement were not void, and a part only of the services had been rendered, it would still be impossible to apportion the consideration; but, as the agreement is contrary to public policy, and void, clearly no part of the consideration can be recovered.

The demurrer to the first count is sustained.