Mrs. Frank W. Dodson, Appellee, v. A. A. McCurnin,
Appellant.

**CONTRACTS: Validity—Public Policy—Agreement to Pay Deputies
Unauthorized Salaries.** An agreement by a county recorder to
pay a deputy more salary than the law allows, coupled with an
agreement on the part of the deputy that he will return the excess
to the recorder provided the board of supervisors refuses to allow
said excess when settling the accounts of the recorder, is against
public policy and void, *because the tendency of such a contract is
to tempt the supervisors to violate the law.*

*Appeal from Polk District Court.*—C. A. Dudley, Judge.

Monday, January 15, 1917.

The plaintiff was recorder of Polk County, and defend-
ant, her deputy. Plaintiff claims under an oral agreement,
under which she paid defendant $25 a month above the com-
pensation allowed him by statute, on condition that he should
refund if the board of supervisors should refuse to allow
plaintiff for this expenditure. The board refused to make
such allowance. Defendant refused to reimburse. Plaintiff
sued on the agreement and recovers. Defendant appeals.
One of his claims is that the alleged agreement is void for
being contrary to public policy.—*Reversed.*

*Tomlinson & Gilmore,* for appellant.

*Parker, Parrish & Miller,* for appellee.

Salinger, J.—I. Appellee makes the avoidance point
that a failure to object to submitting whether the contract
alleged had been entered into, works an estoppel to object
to the fact that that question was submitted. While we have
carefully examined what is cited in support, we shall not
stop to declare whether they sustain the point. This, be-

cause we hold the point to be irrelevant to our decision of this appeal.

By answer, motion to direct verdict, and motion for new trial, defendant urged that the contract sued on was against public policy. The charge of the court ignored this contention, and allowed recovery if the jury found the contract was made, performed by plaintiff, and breached by defendant. The charge was duly excepted to. Hence, we have the question whether the contract relied on by plaintiff is void for being against public policy.

CONTRACTS: validity: public policy: agreement to pay deputies unauthorized salaries.

II. Appellee is in no position to deny that the instructions fairly analyze what the alleged agreement is, and what may be recovered thereunder. This is what the charge says of them: The claimed agreement is that the extra $25 a month paid to defendant by plaintiff for the year 1911 should be repaid by defendant in case the board should refuse to allow her therefor, and require her to pay said sum of $25 a month herself. If plaintiff has paid in an accounting or settlement with the county to the board a reimbursement for the $25 a month paid by plaintiff to defendant, and defendant has on demand refused to reimburse her, he is liable. If the agreement was one wherein and whereby plaintiff agreed to pay defendant for his services as deputy recorder the sum of $25 per month—

"In excess of the sum of $900 allowed for such services by law, for the year 1911, but upon the condition that if the board of supervisors of Polk County would not in an accounting or settlement with the plaintiff as county recorder for the year 1911 allow her in said accounting or settlement for such sums as she, the plaintiff, had paid to the defendant for the year 1911 as salary in excess of $900, that then the defendant would repay her said amount paid in excess of $900 for the year 1911 as salary, and if you find that such agreement was made, and if you further find that plaintiff did pay to defendant $300 in excess of the $900 allowed by law

as salary of the deputy recorder of Polk County during the
year 1911, and if you further find that in an accounting or
settlement between the plaintiff and the board of supervisors
of Polk County for the year 1911 said payments made by
plaintiff to defendant as salary for the year 1911 in the
aggregate of $300 over and above the $900 allowed the de-
fendant by law, were disallowed by the said board of super-
visors of Polk County, and the plaintiff was required to
account therefor, and pay the said sum of $300 to Polk
County in her final settlement with Polk County for the year
1911, notwithstanding her payment of said sum to defend-
ant as salary for the year 1911, then you will find for the
plaintiff.''

Further, if plaintiff is entitled to recover, her damages
will be the amount paid defendant during 1911 ''as salary
in excess of $900'' with interest ''on the aggregate amount
of such excess payments from the date of the final settle-
ment with Polk County and the plaintiff, wherein she was
required to and did pay to Polk County the amount she had
theretofore paid defendant as salary for the year 1911 in
excess of $900.''

Is this an agreement and transaction that is violative of
our public policy?

### 2a.

So far as express words go, the appellant grounds his
claim that it does violate it almost wholly upon the proposi-
tion that any agreement that a public officer shall be paid
either less or more compensation than is provided by law is
void as against public policy. We will not dwell upon this
claim now, because we think the text and cases which he cites,
what these have led us to upon their consideration, consid-
eration of what they in turn cite, and independent research,
present a stronger argument for appellant.

As we understand, the major claim of appellee is that
neither statute nor common law forbid what the parties agreed
to or did, and that the whole transaction is, on its face,

neither against good morals nor injurious to the public; that defendant contended, and plaintiff believed, it was lawful to pay $1,200 a year for salary of a deputy recorder, but, because of being in doubt about the matter, said conditional agreement for reimbursement was entered into.

Does this meet the situation, which, stripped, is this: The salary of the recorder was $2,000 a year. Section 495, Code Supplement, 1913. By the Acts of the 34th G. A., taking effect July 4, 1911, she was required to pay all fees collected and belonging to the county into the county treasury, quarterly. The law required the board of supervisors to fix the compensation for services of county and township officers, not otherwise provided for by law, and to provide for the payment of same. Code Section 422, Par. 14. Another provision was that this deputy "shall receive a salary not exceeding $900 a year, to be fixed by the board of supervisors." Section 496, Code Supplement, 1913. The essence of the alleged agreement is that plaintiff will pay defendant more than the salary allowed by law, and more than the board of supervisors could allow without violating law, and that she should be repaid the excess allowance if, when she turned in all fees collected, the board should refuse to reimburse her out of the same to the amount of the excess allowance.

A contract intended to aid in effecting a transaction prohibited by law is void. *Low v. Hutchinson*, 37 Me. 196. Or one founded on an illegal consideration, which is made for the purpose of furthering any matter or thing prohibited by statute, or to aid or assist any party therein. *Swanger v. Mayberry*, 59 Cal. 91; *Jones v. Hanna* (Cal.), 22 Pac. 883; *Berka v. Woodward* (Cal.), 57 Pac. 777. It condemns, that the contract requires the doing of acts forbidden by statute. *Dillon v. Allen*, 46 Iowa 299. A contract is void if it contemplates the commission of a crime, or the doing of any wrongful or prohibited act. *Kreiss v. Seligman*, 8 Barb. (N. Y.) 439; *Territt v. Bartlett*, 21 Vt. 184. Or acts that

are illegal ·or contrary to public policy. *Drake v. Lauer*, 86 N. Y. S. 986, affirmed 75 N. E. 1129.

But it is not necessary that a prohibited evil should be made criminal, or even penalized, to vitiate contracts made in furtherance of that evil. *Jemison v. Birmingham & A. R. Co.* (Ala.), 28 So. 51; *McGehee v. Lindsay*, 6 Ala. 16; *Moog v. Espalla* ·(Ala.), 9 So. 596. And a contract which, in its execution, contravenes the policy and spirit of a statute, is equally void if made against its positive provisions. *Hunt v. Knickerbacker*, 5 Johns. (N. Y.) 327; *Wetmore v. Brien*, 3 Head (Tenn.) 723.

Of course, any agreement is void if it have for object the commission of a thing made criminal by statute (*Allison v. Hess*, 28 Iowa 388; *Peed v. McKee*, 42 Iowa 689), or have for object anything that is against public policy (2 Elliott, Contracts, Sec. 645).

"Among such obnoxious contracts must be included all such as have for their object the control of public agents by considerations conflicting with their duty and fidelity to their principals." *Oscanyan v. Arms Co.*, 103 U. S. 261, at 277.

The statute says, in terms, that this salary shall be fixed by the board of supervisors, and shall not exceed $900 per year. While no penalty is found in this statute, it would seem that to violate it is penalized in another Code provision. But we need not decide that this is so, because to fix the salary at more is at least a prohibited and wrongful act, and contrary to public policy. And, as has been seen, it is not necessary that 'a thing prohibited be made criminal, or even penalized, to vitiate contracts made to further that thing, or to violate the spirit of the prohibition.

Had the contract sued on been an expressed agreement that pressure was to be put upon the board to fix the salary at more than $900, and that the party bringing such to bear should be compensated if he or she succeeded in inducing the board to violate the statute, which limits the salary, it would

hardly be contended that suit would lie for such service. Of course, the contract alleged is not that. We may go beyond saying this, and concede that such pressure was not the object of the agreement; was not in contemplation when the parties agreed; and that they had no corrupt intention, then. We may concede further that no harm was in fact done because of the agreement, and no injury to the public worked. Will that sustain the recovery by plaintiff? The law answers.

About the time this agreement was made, the parties to it and the board were in doubt whether the board could allow more than $900 a year. Defendant was of the opinion that this might lawfully be done, and induced the plaintiff to agree with that opinion. We may concede that the parties intended no wrong. But it is not the case of one who acts under duress (*Kernion v. Hills,* 1 La. Ann. 419), or of *Hunter v. Agee,* 5 Humph. (Tenn.) 57, in which a promise to indemnify one who has unwittingly done an illegal act, from consequences, is held valid. It is said in *Elkhart County Lodge v. Crary,* 98 Ind. 238, at 242, that:

"A contract which tends to the injury of the public service is void although the parties entered into it honestly and proceeded under it in good faith. The courts do not inquire into the motives of the parties in the particular case to ascertain whether they were corrupt or not, but stop when it is ascertained that the contract is one which is opposed to public policy.".

In *Atcheson v. Mallon,* 43 N. Y. 147, at 150, it was said:

"If Mallon had promised Atcheson a sum of money if he would refrain from making any proposal, and Atcheson relying upon it had made none, and then had sought to enforce the agreement, there can be no doubt that the law would have held the promise void."

The contract was held to be against public policy because of the natural tendency it had to keep down competition, "and not on account of the actual result upon the public, or upon third persons of particular contracts. . . . It

is because men with these agreements in their hands, and relying upon them for their gain, do not act toward the public and third persons as they would without them, under the stimulus of competing opposition.''

Our statute on maximum pay is too plain for construction. In *Vandercook v. Williams* (Ind.), 1 N. E. 619, at 624, a statute that may possibly be said to be ambiguous was discussed on a claim of a good-faith misunderstanding of same. The alleged good faith was of no avail, it being said:

''It is probable, we think, that the contract or agreement set out in appellant's complaint was executed by the parties thereto upon the supposition that its execution was authorized by the language used in . . . Section 6416 . . . namely: 'No person, other than the officials provided for in this law, shall be employed by the county commissioners to discover omitted property.' We are of opinion, however, that this provision of the statute is not fairly open to the construction that the legislature intended thereby to authorize the county commissioners to employ any of the officials named in that law to discover omitted property, at an additional compensation to the compensation elsewhere given them by law for their services in the discharge of their official duties.''

It is not saved by freedom from corrupt intent. *Richardson v. Crandall*, 48 N. Y. 348.

''It matters not that any particular contract is free from any taint of actual fraud, obligation or corruption. The law looks to the general tendency of such contracts.'' Greenhood, Public Policy, page 5.

It is said in *Sussman v. Porter*, 137 Fed. 161, that whatever the intention of the parties may have been, and whether the influences actually exerted thereunder were honest or corrupt, the controlling thing ''is the temptation to corruption and dishonesty, which the courts will not tolerate.''

The principle of the decisions is controlled solely by the tendency of the contract, and it matters not that nothing

improper was done or expected to be done under it. *Sweeney v. McLeod* (Ore.), 15 Pac. 275, at 278; *Clippinger v. Hepbaugh,* 5 Watts & S. (Pa.) 315.

"In other words, its validity is determined by its general tendency at the time it is made, and, if this is opposed to the interests of the public, it will be invalid, even though the intent of the parties was good and no injury to the public would result in the particular case. The test is the evil tendency of the contract, and not its actual injury to the public in a particular instance. . . . The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of its courts." 9 Cyc., pp. 481, 482. *Brown v. First Nat. Bank* (Ind.), 37 N. E. 158, at 162; *Sussman v. Porter,* 137 Fed. 161.

Contracts have been avoided for evil tendency, though nothing in itself criminal or prohibited was in the contract itself; e. g., agreements which tend to deflect the proper location of a line of railroad or of depots by means of giving the officer of the proposed railroad a personal inducement to locate as is desired by those who furnish the inducement. *Holladay v. Patterson,* 5 Ore. 177; *Woodstock Iron Co. v. Richmond & D. Ex. Co.* (Ala.), 9 Sup. Ct. Rep. 402; *Pacific R. Co. v. Seely,* 45 Mo. 212; and *Fuller v. Dame,* 35 Mass. 472. In *Williamson v. Chicago, R. I. & P. R. Co.,* 53 Iowa 126, at 138, there is cited with approval a statement in *Bestor v. Wathen,* 60 Ill. 138:

"The defendants have entered into a contract, the effect, or at least the tendency, of which was to induce the complainants to commit a breach of duty."

And one in which a shareholder promised a share of the net earnings of his stock for help to raise funds which he needed to join an enterprise that tended to be an unlawful monopoly is condemned in *Richardson v. Buhl* (Mich.), 6 L. R. A. 457. And so of a contract wherein an attorney contracted to pay any judgment that might be rendered against his client on appeal, if the latter would appeal and pay the

attorney a fee for conducting the appeal.  *Adye v. Hanna,* 47 Iowa 264.

In *Hazelton v. Sheckels,* 26 Sup. Ct. Rep. 567, there was an offer to sell a tract of land at a specified price, if the offer was accepted by a time stated.  It was made in part consideration of services rendered and to be rendered in bringing to the attention of a committee of Congress that the tract offered, and more retained by the owner, was a suitable and appropriate site for a Hall of Records.  It resulted that the government accepted the land at a larger price than the one at which the one tract was offered to the one doing this service.  And it was said that plaintiff was not bound to accept the offer, "and naturally would not do so unless he could agree, as he did with the government, for a larger price," and:

"The real inducement offered to him was that he would receive all that he could persuade the government to pay above the sum named. . . . The objection to them rests in their tendency, not in what was done in the particular case. . . . The court will not inquire what was done. If that should be improper, it probably would be hidden, and would not appear.  In its inception, the offer, however intended, necessarily invited and tended to induce improper solicitations, and it intensified the inducement by the contingency of the reward."

In *Crichfield v. Bermudez Asph. Paving Co.* (Ill.), 51 N. E. 552, a contract which, in effect, agrees to solicit the making of contracts by the members of a common council by the exercise of influence and other means, is viewed in this same way.

Things have been condemned which are in themselves proper, and which do not necessarily have to be accomplished by improper means.  Contracts to promote legislation are an illustration.  They have been almost always held to be void, and on the ground that they tend to subject the members of the legislature to improper influences.  *Stirtan v. Blethen*

(Wash.), 139 Pac. 618; *Marshal v. Baltimore & O. R. Co.,* 16 How. (U. S.) 314; *Richardson v. Scotts Bluff County* (Neb.), 81 N. W. 309; *Tool Company v. Norris,* 69 U. S. 45, at 55; *Sussman v. Porter,* 137 Fed. 161. And it is the text in 6 R. C. L., page 731. We may assume that the naked agreement to pay a deputy a larger salary than the law permits, and to use proper means to be reimbursed, assuming there can be proper means to this end, is not unlawful nor condemned by public policy. Surely, the holding of elections and proper means to promote candidacies thereat are not under the ban of either law or policy. Yet it has been held that, though this be so, an agreement to bring improper influences to bear upon the election, or to bring influence which is not specified nor limited, and which may or may not be improper, is void, the tendency being held to be that it would be improper. *Stirtan v. Blethen* (Wash.), 139 Pac. 618. In that case, the contract was merely that the principal, who, so far as appears, was not even a candidate, would reimburse the agent for money expended to institute and carry out a recall election. The appellant therein insists that the contract pleaded violates no sound canon of public policy. He argues, in substance, that a recall election is not contrary to public policy; that it is a means by which society may protect itself against undesirable public servants; and that many expenditures are manifestly proper to promote such an end. It is held that no plea of the motive can justify and save the contract; that to do so would open wide the door to secure contracts of the same character in furtherance of the most sinister and corrupt propositions; that, if corrupt means were used, they would be hidden; and that the case is analogous to those which involve the influencing of legislation. And see *Keating v. Hyde,* 23 Mo. App. 555. And see also *Whitman v. Ewin* (Tenn.), 39 S. W. 742; and *Nichols v. Mudgett,* 32 Vt. 546.

In Pollock's Principles of Contract (2d Ed.), page 286, it is said:

"But an agreement which has an apparent tendency that way, though an intention to use unlawful means be not admitted, or even be nominally disclaimed, will equally be held void."

"The law looks to the general tendency of such agreements; and it closes the door to temptation, by refusing them recognition in any of the courts of the country." *Tool Co. v. Norris,* 2 Wall. (U. S.) 45, at 56; *State v. Johnson,* 52 Ind. 197; *Oscanyan v. Arms Co.,* 103 U. S. 261.

Influence brought to bear on the board to have it authorize a salary beyond the limitation of the law could not be what is spoken of in *Weed v. Black,* 2 McArthur (U. S.) 268 (29 Am. Rep. 618), as "honest service." Personal influence to be exercised over an officer of government in the procurement of contracts "is not a vendible article in our system of laws and morals." *Oscanyan v. Arms Co.,* 103 U. S., at 273. It does not avail that the service rendered under a contract which tends to inspire improper pressure may have been legitimate. *Hazelton v. Sheckels,* 26 Sup. Ct. Rep. 567. And see *Trist v. Child,* 21 Wall. (U. S.) 441. The one thing the agreement in this case tended to induce was attempts to have the board of supervisors violate law. The law should not encourage what will lead to having public officers pressed to violate law and fail in duty to obey law.

For *Wood v. McCann,* 6 Dana (Ky.) 366, it is said, in *Richardson v. Scotts Bluff County* (Neb.), 81 N. W. 309,—and it fully applies here in principle:

"It is certainly important to justice and wise legislation and, therefore, to the most essential interests of the public, that the legislature be perfectly free from any extraneous influence which may either corrupt or deceive the members or any of them."

And the text of 6 R. C. L., pages 731, 732, holds that, though an agreement which tends to induce illegitimate pressure upon officers *can* be performed without the exercise of such pressure, the fact that the contract is silent as to what

the pressure shall be makes the agreement void because wrong influence may be employed, and there is danger that it will be, and says:

"If the terms of the contract are broad enough to cover services of any kind, whether secret or open, honest or dishonest, the law pronounces a ban upon the paper itself."

When compensation depends upon success in inducing action by public officers, then, though it may be that no improper influence has in fact been employed in a particular case, there is still the fact that the desire to obtain pay contingent upon official action suggests the use of sinister and corrupt means for the accomplishment of the end desired. *Elkhart County Lodge v. Crary,* 98 Ind. 238; *Marshall v. Baltimore & O. R. Co.,* 16 How. (U. S.) 314, 315; *Tool Co. v. Norris,* 2 Wall. (U. S.) 45, 52; *Trist v. Child,* 21 Wall. (U. S.) 444; *Weed v. Black,* 2 McArthur (U. S.) 268. That having one's compensation depend upon what officers may be induced to do is "a direct and strong incentive to the assertion of not merely personal but sinister influence," is, in effect, held in *Wood v. McCann,* 6 Dana (Ky.) 366; *Marshall v. Baltimore & O. R. Co.,* 16 How. (U. S.) 314, 315; *Coquillard's Admr. v. Bearss,* 21 Ind. 479; *Harris v. Roof,* 10 Barb. (N. Y.) 489; *Weed v. Black,* 2 McArthur (U. S.) 268, and *Chippewa V. & S. R. Co. v. Chicago, St. P., M. & O. R. Co.* (Wis.), 44 N. W. 17. And in *Collins v. Blantern,* 2 Wils. 347, at 350, it is said: "This is a contract to tempt a man to transgress the law." One should not put himself into a position where personal interest may tempt him to do or have done that which conflicts with official duty to the public. *Stropes v. Board,* 72 Ind. 42, at 43, 44; 6 R. C. L., Sec. 136; *Elkhart County Lodge v. Crary,* 98 Ind., at 242; *Oscanyan v. Arms Co.,* 103 U. S., at 273.

It is enough, says *Clippinger v. Hepbaugh,* 5 Watts & S. (Pa.) 315, that it is the tendency of the contract to lead "necessarily, in the hands of designing and corrupt men to . . . the use of an extraneous, secret influence" over pub-

lic officers. "It may not corrupt all; but if it corrupts or tends to corrupt some, . . . that is sufficient to stamp its character with the seal of reprobation before a judicial tribunal."

Of course, the fact that one of the parties will be benefited by the refusal to enforce such a contract does not constitute a sufficient ground for its enforcement. *Dillon v. Allen,* 46 Iowa 299. And one who must rely on an illegal contract cannot recover, although the other party has received a benefit from the act. *Stirtan v. Blethen* (Wash.), 139 Pac. 618.

Appellee urges that *Smith v. Keith,* 9 Humph. (Tenn.) 116, is conclusive support for the judgment she has. Smith had a judgment against Keith, upon which execution was placed in the hands of an officer for collection. Keith paid the money to Smith and took his receipt for it. The constable nevertheless claimed commissions on the amount of the judgment, the same as if he himself had collected it. Keith refused, and gave as reason that the constable was not entitled to commissions for money which he had not collected. Smith thought otherwise, and agreed with Keith that, if he would pay the constable, and it should turn out, upon submitting the question to a named lawyer, that the constable was not legally entitled to receive them, he (Smith) would himself repay Keith. Upon this agreement, Keith paid the constable. The question was afterwards submitted, and determined against the constable. On suit to compel Smith to repay, he contended that the agreement to refund, entered into by Smith and Keith, is *nudum pactum,* and as such could not be enforced by action. The court says it thinks otherwise; that the money was paid by Keith upon the agreement of Smith to refund it if there were no law by which the constable was entitled to it; that there most clearly is none; "and Smith's contract to refund in such case is obligatory upon him and is supported by a good consideration, namely, the payment of the money by Keith to the constable."

At least two things differentiate the case from this case: (a) The decision turns on disagreeing with the manifestly untenable claim that there was no consideration. Of course, it is one to induce a party to pay over money, on agreement to reimburse in a stated contingency. It is but to say that prejudice may be consideration. (b) The question of public policy is not mooted; and being void for being violative of public policy, and void for want of consideration, are distinct things. *Richardson v. Crandall*, 48 N. Y. 348. If the case held what appellee claims for it, we are disinclined to follow it.

In *Bodenhofer v. Hogan*, 142 Iowa 321, we hold that, although a deputy sheriff may have entered into an illegal contract with his principal to accept less compensation than that legally fixed by the supervisors, that fact will not defeat his recovery of the lawful salary from the sheriff, where he is liable for the same, and the action is not based upon the contract. Nor will the sheriff be permitted to plead and prove the illegal contract in defense of the action; and the deputy is not estopped to recover his full compensation, as fixed by the supervisors, by reason of the fact that he has accepted a less sum from the sheriff under an illegal contract with him, there being no consideration for the acceptance of the reduced amount. This, too, is made to turn on consideration. And there is this additional distinction: A lobby to lawfully *lower* a salary is not an imminent danger.

### 3a

To summarize: A contract which is not in itself unlawful may yet offend against public policy if it naturally suggests unlawful means in aid of the contract, though there is nothing said as to the means wherewith to effectuate the contract in whole or in part. If a desire to effectuate it may lead to the use of unlawful means, the contract is against public policy. It is not vital that proper means are possible and some of the means that might suggest themselves and to

some persons need not necessarily be improper ones.    The evil tendency may condemn it, though in itself it has nothing criminal or prohibited, or though unlawful means are not admitted, or are even nominally disclaimed, if, in spite of all, there is the general tendency to create temptation to do or have that done which is unlawful.    It is the temptation to corruption and dishonesty that counts.    It is the theory of the law to close the door to temptation.    It is not material that nothing improper was expected to be, or was done, nor whether influence suggested was actually used, and whether, if so, it was dishonest or corrupt.    The actual results as to third persons or the public are not material.    It is enough that the agreement tends to induce action towards the public and third persons that would not be suggested without its stimulus.    The intention is immaterial.    Whatever it was, the parties could not fail to understand that a perfectly plain statute would interfere with action that the contract naturally suggested.    If public policy will not permit a thing to be done expressly, it is against policy where something tends to induce doing the thing by indirection.

While the statute which limits compensation does not contain a penalty, other statutes make it a misdemeanor to do an act forbidden by law.    At any rate, it is not necessary that the contract shall, or tends to, induce an evil which is neither made criminal nor penalized.

What was necessary to effectuate this contract in part could not be lawful influence.    Any attempt to induce the board to reimburse for this allowance was necessarily unlawful.

The essence is that defendant was paid more than the salary allowed by law, on condition that he must repay unless the board reimbursed for the excess allowance; that one should not put himself into a position where personal interests may tempt him to have others do what conflicts with their official duty; that there must not be contracts that tempt men to transgress the law, and *a fortiori* to have others transgress

it; that, though no improper pressure is contemplated, or has been employed, it is still true that the desire to obtain contingent pay, depending on official action, suggests bad means, and is a direct and strong incentive to use them; that it is of the public policy that official bodies shall be perfectly free from extraneous influences which might corrupt or deceive them; that a contract, or whatever tends to produce or may induce pressure on public officers to violate the law and their duty, is, therefore, necessarily against public policy; that the tendency to induce persuasion to have the government pay an increased price for property avoids the contract, even if, in the particular instance, the price obtained was not improper. It is controlling that there is a tendency to induce others to commit a breach of duty; that it tends to promote control of public agents by considerations that conflict with their duty and fidelity.

The one thing the agreement in this case tended to inspire was an attempt to induce the board of supervisors to violate the law. It is sufficient that it may corrupt some or tend to corrupt them, though it might not corrupt all, and the law cannot know who will not yield to temptation. It suffices that the tendency of this contract is dangerous where designing or corrupt persons enter into one like it.

If, to the provision that the retention of the money by defendant should depend upon whether the board of supervisors could be induced to violate the statute, there had been added that the parties to the contract should make every effort to have the board disregard the law, of course such contract would offend against public policy—as much so, in principle, as if it were agreed that defendant might keep the additional $25 a month if plaintiff were able to secure that much by burglarizing a bank, and that, in consideration, defendant should give what aid he could to the enterprise. If an express agreement that pay should depend upon successful aid in having law violated is void, so is a contract which tends to have just that done. Can there be more than

one view of the tendency of this agreement? No matter how honest of intention the parties were, the plaintiff might easily find herself under direct temptation to promote the illegal allowance; for instance, if it proved that defendant was financially irresponsible, and could not be made to repay in any event. As to the defendant, the tendency is much more marked than that. He certainly did not press for the additional allowance for the sake of repaying it; he desired to keep it; he could not keep it unless somehow the board violated the statute. Could there be a more direct temptation for him to engage in an attempt to have the board do this? Perhaps this is not true of these particular. parties. Perhaps that which tends to tempt men generally would leave them untouched. Perhaps this particular board could not be swayed, no matter what pressure was brought. It may be conceded that these parties would not use corrupt pressure, but the tendency for them to press at all was a tendency to press for an illegal act. Assume that these parties would not use corrupt influences, and that this board could not be thus influenced; yet the condemnation of agreements that have such tendencies has in mind all men, with varying tendencies and varying power to resist temptation. If what was done here would tend to injure the public interest in the ordinary case, or in some case, that invokes the ban.

III. Cases like *Bartlett v. Collins* (Wis.), 85 N. W. 703, *Reynolds v. Nichols,* 12 Iowa 398, and *Guenther v. Dewien,* 11 Iowa 133, in effect do nothing but lay down the general rule that any agreement which *is* against public policy is void. *Honaker v. Board* (W. Va.), 24 S. E. 544, invalidates a contract voted for by a commissioner of the board of education if anything was given to him to influence him as to that vote. *Harvey v. Tama County,* 53 Iowa 228, is that a plaintiff cannot aid his own recovery by pleading that he was a party to an agreement to bribe voters. These give us no help.

Then there is 9 Cyc. 496, 497, *Tappan v. Brown,* 9 Wend.

(N. Y.) 175, and *Gilman v. Des Moines Valley R. Co.*, 40 Iowa 200, which are authority for the proposition that a contract to pay and receive less than compensation or fees fixed by law is against public policy, as between them and the public. *Miller v. United States*, 103 Fed. 413, 415, puts this on the ground that to sanction such agreements would exclude from service men who are willing and well qualified to take the office at the salary fixed by law, but who will not serve for less. Somewhat analogous are 9 Cyc. 495, 496, and *Wells v. Foster*, 8 M. & W. 149, 151, dealing with an assignment of emoluments of the office, and of which it is said that permitting this would cause the public service to suffer, because the officer would no longer have any interest in the compensation to be paid him for his labor, and that "the public servant should retain the means of a decent subsistence without being exposed to the temptation of poverty." In *Richardson v. Crandall*, 48 N. Y. 348, there was condemned a bond to the provost marshal as security that the men furnished to him by the maker of the bond should not desert before reaching the rendezvous; and it is said, "this would tend to make him negligent in selecting the quota," and "if it was his duty to reject men because he believed they would desert, then he should not have been influenced to take them by any pledge." *Bloom v. Hazzard* (Cal.), 37 Pac. 1037, sustains an agreement by a constable to levy an execution for less than the legal fees, and to make full charges in his return, because the value of the property seized was presumably less than the judgment and fees. Neither this, which is rather an exceptional holding, nor any of the other cases just referred to, have much bearing on this dispute. They have attention by way of elimination, and have been forced upon our attention largely by running down references to textbooks found in the brief of appellant.

Now, in 9 Cyc. 496, 497, it is said that a promise to give a public officer more than the legal salary or fees is void,

as well as one for less than the legal.   An examination shows
that the cases relied on to sustain this general pronounce-
ment involve in some form that more than the law provided
was either promised to, or sought to be exacted by, public
officers; and it was held, against attempt to enforce the prom-
ise or to sustain resistance to the exaction, that more than
the compensation fixed by law would not be sanctioned by
the law.   See *Hendricks v. Board,* 49 Miss. 612; *Keith v.
Fountain* (Tex.), 22 S. W. 191; *Hatch v. Mann,* 15 Wend.
(N. Y.) 44; *Morris v. Hoff,* 3 N. J. L. 207; *Evans v. Inhab-
itants of City of Trenton,* 24 N. J. L. 764; *Burk v. Webb,* 32
Mich. 173; *Fawcett v. Eberly,* 58 Iowa 544; *Adams County
v. Hunter,* 78 Iowa 328; *Day v. Townsend,* 70 Iowa 538;
*Hawkeye Ins. Co. v. Brainard,* 72 Iowa 130; and *Williams v.
Segur* (Ind.), 1 N. E. 707.

If all that were involved here is that this principal prom-
ised her deputy out of her private purse a compensation
greater than allowed by law, these cases clearly have no ap-
plication.   Moreover, there is an essential difference between
a promise and acceptance thereof that less than what the
law allows will be paid, and the converse.   As said, the agree-
ment to pay less makes possible that desirables will not be
available and that incompetents will serve.   Standing alone,
public interest is not concerned with an agreement of the prin-
cipal to pay from her own funds more than the law allows
the public to give.   On very strained reasoning, it is possible
to put agreement to pay more in a class with agreements to
pay less than the compensation fixed by law; that is to say,
*possibly* it might tend to make the office less valuable and,
therefore, the incumbent less interested in performing its
duty well.   Possibly, too, persons influential in politics and
aspiring to be deputy might force agreements in advance of
the nomination or election, which would lead to the same re-
sult.   But, as said, this is all rather strained; and the out-
standing distinction is that there will be no tendency to bring

to bear undue pressure to have compensation fixed at less than the law permits. We are disinclined to avoid the contract here, on this theory.

IV. Trial errors complained of require no consideration, in view of the conclusion we reach. The motion to strike amendment to appellant's abstract, which was submitted with the case, requires no disposition, for the same reason.

The judgment below must be—*Reversed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.