C. E. BLAIR et al., Appellees, v. R. F. FITCH, Appellant.

CONTRACTS: Public Policy—Property in Custodia Legis. It is 1 not violative of public policy for the president of a corporation which has levied on a restaurant stock and fixtures to contract, without the authority of the court, with an employee of the restaurant owner (and while the sheriff is holding the property) to operate the restaurant and preserve it as a going concern, it appearing that the sheriff was not to receive any compensation under said contract, that all parties impliedly consented thereto, and that the property was properly preserved.

CONTRACTS: Consideration—Assumption of Obligation by Unin- 2 terested Party. Inducing one to render services and incur expense on a subject-matter as to which the promisor has no *personal* interest, furnishes adequate consideration for a promise to pay for such services and expense.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

NOVEMBER 20, 1920.

ACTION to recover for the value of services claimed to have been rendered under an alleged oral contract. There

was a verdict and judgment in the court below for plaintiff,
and defendant appeals.—*Affirmed*

*Burrell & Devitt* and *McCoy & McCoy*, for appellant.

*Malcolm & True,* for appellees.

Stevens, J.—I.  Plaintiffs, who are husband and wife,
alleged in their petition that they entered into an oral agree-
ment with the defendant on or about September 18, 1916,
by the terms of which they agreed to render

1. Contracts :
public policy :
property *in*
custodia legis.

joint services in the care, management, and
conduct of a restaurant known as the Savoy
Cafe, in the city of Oskaloosa.; that, while
in the custody and having the management of said business,
they were to render semi-monthly reports of the receipts
and disbursements to the defendant or to the sheriff of
Mahaska County; that the defendant agreed to reimburse
them for any sums expended by them for labor, merchan-
dise, and other necessary expenses incurred in the conduct
of said business in excess of the income therefrom; that, in
pursuance of said oral agreement, they entered upon the
discharge of their duties on September 18th, and continued
thereunder until December 13, 1916; that the disburse-
ments of said business exceeded the income therefrom in
the sum of $164.68; that the fair and reasonable value of
their services was $353.25; and that they made full, item-
ized semi-monthly reports to the sheriff, as agreed.  They
demand judgment for $517.93.  The defendant, for answer
to plaintiffs' petition, denied the alleged oral agreement,
and averred that, on September 18th, the sheriff of Mahaska
County took possession of said restaurant and all the furni-
ture, fixtures, and utensils connected therewith, under a
landlord's writ of attachment, issued in a suit brought by
the Downing Hotel Company against W. C. Murdy and
others; that Murdy was the owner of said restaurant,
furniture, utensils, etc., and that, on and prior to said 18th
day of September, he was in possession, as the tenant of

the hotel company, and carried on the business thereof; that, if an oral contract was entered into by plaintiffs with the defendant or any other person, as alleged, such contract was illegal, contrary to public policy, and void, and that same was without a valid consideration.

The evidence without dispute shows that judgment was, on March 19, 1917, rendered in the district court of Mahaska County against W. C. Murdy and in favor of the Downing Hotel Company for $1,125, costs, and attorney fees, amounting to $110, and that a landlord's lien was established against the property levied upon. It further appears from the record that the writ of attachment was levied on September 18th, the day it is claimed the oral contract was entered into. As indicated, plaintiffs were in possession of the restaurant with the knowledge and acquiescence, if not with the consent, of the sheriff. That services were rendered by plaintiffs, substantially as claimed, is not denied in the evidence, nor is it claimed that they failed to make semi-monthly reports, as they claim to have agreed, or that the disbursements did not exceed the income in the amount stated; but it is contended by defendant that the value of the services rendered was much less than alleged. The general rule that contracts in violation of statute, as well as certain other contracts, are void, as against public policy, as stated in the numerous cases cited, is a familiar one. *Guenther v. Dewien,* 11 Iowa 133; *Pike v. King,* 16 Iowa 49; *Dillon & Palmer v. Allen,* 46 Iowa 299; *Dodson v. McCurrin,* 178 Iowa 1211; *Kinney v. McDermot,* 55 Iowa 674; *Pangborn v. Westlake,* 36 Iowa 546; *Steever v. Illinois Cent. R. Co.,* 62 Iowa 371; *Koepke v. Peper,* 155 Iowa 687. Perhaps the language of the court most favorable to appellant is found in *Dodson v. McCurrin,* supra, as follows:

" 'In other words, its validity is determined by its general tendency at the time it is made, and, if this is opposed to the interests of the public, it will be invalid, even though the intent of the parties was good and no injury to the public would result in the particular case. The test is the

evil tendency of the contract, and not its actual injury to the public in a particular instance. * * * The law looks ·to the general tendency of such agreement, and it closes the door to temptation by refusing them recognition in any of its courts.' "

The defendant was president of the Downing Hotel Company, but, so far as disclosed by the record, was not in actual charge of the business thereof. If the oral agreement in question is void and unenforcible because the same is illegal, or in contravention of public policy, it must be because of its relation to the property, which, as stated, was in the custody of the sheriff under a landlord's writ of attachment, or because the sheriff was a ·party thereto.

For a short time prior to September 18th, plaintiff C. E. Blair was employed in the restaurant by Murdy. According to the testimony of Blair, defendant desired the restaurant kept open because he thought it would sell to better advantage as a going concern. Except as light is thrown thereon by the fact that the attachment suit was prosecuted to judgment, and the property sold under execution, there is nothing in the record tending to show that Murdy did not consent to the arrangement between plaintiffs and defendant. There is no affirmative evidence that he did consent. He made no appearance in the attachment suit, and judgment against him was entered by default. Plaintiff does not seek to recover upon a contract with the sheriff. According to Blair's testimony, the defendant requested that he make reports to himself or to the sheriff, stating that, if same were made to the latter, he would get them from him. It is true that the sheriff testified that he made arrangements with plaintiff Blair to go into the restaurant, and upon the advice of an attorney that it would be better to do so, for him to keep it open. This testimony was denied by plaintiff. Doubtless, Murdy abandoned the property taken under the attachment, as soon as the writ was levied. It is not claimed that the sheriff was to receive any compensation from either of the parties to the contract, or that the property was not properly preserved and cared for.

It is true that no order or direction for the conduct of the restaurant was asked or obtained from the district court. Manifestly, contracts having for their object the corruption of a public officer, or contracts the tendency of which is to tempt such officer from the proper performance of his official duties, are contrary to public policy and unenforcible. We may assume that it was apparent to all parties concerned that their interests would be advanced by continuing the business of the restaurant, pending the attachment proceedings. Surely, the defendants in the attachment suit were not injured thereby. The property was purchased by the hotel company at the sheriff's sale. We perceive no theory upon which the contract was violative of the welfare of the public, or tended either to corrupt a public officer or to tempt him from the performance of his duty. In our opinion, the contract relied upon is not contrary to public policy.

II. The evidence as to the value of plaintiffs' services was conflicting, but the verdict is not without support therein. There is nothing in the record to indicate that the jury was influenced by passion or prejudice. We cannot, therefore, hold that defendant's motion for a new trial should have been sustained upon this ground.

Some claim is made by appellant that the oral agreement was without consideration, because defendant had no personal interest whatever in the matter. According to the testimony of plaintiffs, he came to the restaurant on the 18th of September, and requested plaintiffs to continue the business of the restaurant, paying the expenses from the receipts derived therefrom, so far as they were sufficient for that purpose, and, if it were necessary to do so, to advance their own funds; and said that he would personally pay them for the services rendered, and reimburse them for all sums expended in excess of the income from the business. While plaintiffs knew that a writ of attachment had been levied upon the property at the suit of the hotel company, defendant was competent to

2. CONTRACTS: consideration: assumption of obligation by uninterested party.

contract, and the jury may well have found from the evidence that he personally entered into and assumed the obligations of the oral contract. It is true that the record does not affirmatively show that he had permission from the owner to put plaintiffs in charge of the business, but the owner appears to have acquiesced in the arrangement; at any rate, no objections on his part are shown, and, as stated, he did not contest the attachment suit. As we find no error in the record, the judgment of the court below is—*Affirmed.*

WEAVER, C. J., LADD and ARTHUR, JJ., concur.