NELLIE M. RICHARDSON V. SCOTT'S BLUFF COUNTY.

FILED DECEMBER 19, 1899.   No. 9,055.

Compensation of Lobbyist: VALIDITY OF CONTRACT.  A contract by
   which a person agrees to draft a bill, have it introduced in a
   legislature, explain it to and make arguments in its favor be-
   fore committees of the legislature, and do all things needful and
   proper to secure its passage, such party to receive no compensa-
   tion unless the passage of the bill, an appropriation act, is pro-
   cured—if successful, the fees not fixed, but to be liberal—is
   vicious, illegal and void; and, in the event of the passage of the
   bill, there can be no recovery of a fee in a suit upon the contract,
   nor as upon an implied contract, nor a *quantum meruit* for the
   services performed.

ERROR from the district court of Scott's Bluff county.
Tried below before GRIMES, J.   *Affirmed.*

The facts are stated in the opinion.

*M. B. Reese, C. A. Robbins* and *F. I. Foss*, for plaintiff
in error:

The services rendered by the plaintiff for the defend-
ant before the legislature in securing the passage of the
bill for the relief of the defendant were lawful.   See
*Foltz v. Cogswell*, 86 Cal., 542; *Kansas P. R. Co. v. McCoy*,
8 Kan., 538; *Stanton v. Embrey*, 93 U. S., 548; *Chesebrough
v. Conover*, 140 N. Y., 382; *Yates v. Robertson*, 80 Va., 475;
*Barry v. Capen*, 151 Mass., 99; *Dillon v. Darst*, 48 Nebr.,
803.

The county board had the power and authority to em-
ploy the plaintiff, as attorney or agent, to present the
merits of the county's claim against the state to the leg-
islature.   See *Smith v. Mayor*, 13 Cal., 531; *Hornblower v.
Duden*, 35 Cal., 670; *Clarke v. Lyon County*, 8 Nev., 181;
*Ellis v. Washoe County*, 7 Nev., 291; *Tatlock v. Louisa
County*, 46 Ia., 138; *Memphis v. Adams*, 9 Heisk. [Tenn.],
518; *Gandy v. State*, 27 Nebr., 707; *Fuller v. Madison
County*, 33 Nebr., 422; *Huffman v. Commissioners*, 23 Kan.,

281; *Commissioners of Hamilton County v. Webb*, 47 Kan., 104.

The defendant is estopped to claim that the contract of employment was irregular. See *Lincoln Land Co. v. Grant*, 57 Nebr., 70; *Grand Island Gas Co. v. West*, 28 Nebr., 852; *State v. Lancaster County*, 20 Nebr., 419; *State Board v. Citizens S. R. Co.*, 47 Ind., 407; *Brown v. Merrick County*, 18 Nebr., 355; *Northampton County's Appeal*, 30 Pa. St., 305; *City of Natchez v. Mallery*, 54 Miss., 499; *Argenti v. City of San Francisco*, 16 Cal., 255; *Clark v. Dayton*, 6 Nebr., 192; *Hull v. Kearney County*, 13 Nebr., 539; *Fister v. La Rue*, 15 Barb. [N. Y.], 323; *Power v. May*, 114 Cal., 207; *Huffman v. Greenwood County*, 23 Kan., 281; *Commissioners of Hamilton County v. Webb*, 47 Kan., 104; *City of Ellsworth v. Rossiter*, 46 Kan., 237; *City of Cincinnati v. Cameron*, 33 O. St., 336; *Ward v. Town of Forest Grove*, 20 Ore., 355; *Hawk v. Marion County*, 48 Ia., 472; *Kneeland v. Gilman*, 24 Wis., 39; *Allegheny City v. McClurkan*, 14 Pa. St., 81; *Beers v. Dalles City*, 16 Ore., 334; *Brown v. City of Atchison*, 39 Kan., 49.

*J. H. Broady*, also for plaintiff in error.

References: *State v. Moore*, 40 Nebr., 854; *Omaha & R. V. R. Co. v. Brady*, 39 Nebr., 49; *Foltz v. Cogswell*, 25 Pac. Rep. [Cal.], 60; *State v. City of Des Moines*, 65 N. W. Rep. [Ia.], 818; *Hall v. Hooper*, 47 Nebr., 111; *Thomas v. City Nat. Bank*, 40 Nebr., 506; *Ragoss v. Cuming County*, 36 Nebr., 375; *Brown v. Board*, 103 Cal., 531; *Fister v. La Rue*, 15 Barb. [N. Y.], 323.

*M. J. Huffman*, *T. W. Morrow* and *George W. Heist*, contra:

The alleged contract upon which plaintiff seeks to recover, as set up in her petition and explained by the evidence introduced by her in support of her claim for work performed thereunder, is void, as against public policy. See *Clippinger v. Hepbaugh*, 5 Watts & S. [Pa.], 315;

*Harris v. Raof,* 10 Barb. [N. Y.], 489; *Rose v. Truax,* 21 Barb. [N. Y.], 361; *Marshall v. Baltimore & O. R. Co.,* 16 How. [U. S.], 314; *Trist v. Child,* 21 Wall. [U. S.], 441; *Mills v. Mills,* 40 N. Y., 543; *Sweeney v. McLeod,* 15 Pac. Rep. [Ore.], 275.

HARRISON, C. J.

There was filed in this action in the district court of Scott's Bluff county a petition, which was in part as follows: "The plaintiff complains of the defendant and alleges that on or before the 1st day of January, 1893, the plaintiff was a duly authorized attorney at law, and admitted to practice in the courts of the state of Nebraska, and as such attorney at law was engaged in the practice of her profession in accepting retainers, and prosecuting and defending such claims and cases as came within her employment as such attorney at law; that prior to said date and time, to-wit, on or about the 1st day of September, 1889, a criminal action was tried in said county of Scott's Bluff, wherein the state of Nebraska prosecuted one George S. Arnold for the crime of murder in the first degree, and such proceedings were had therein as resulted in a conviction of said Arnold; that the whole costs of said prosecution and trial amounted to about the sum of $7,016.01; that at said time the said county of Scott's Bluff had but recently been organized, and being compelled to pay said costs, the same became a heavy burden upon the people and taxpayers of said county, and the said county determined to make an attempt to obtain back the said expenses from the state by means of an appropriation by the legislature, and to do all things necessary or available to that result. Accordingly, thereupon, about the 14th day of January, 1893, two of the county commissioners of said Scott's Bluff county, being a majority of all the county commissioners of said Scott's Bluff county, for and on behalf of said county orally employed this plaintiff to prepare a suitable appropriation bill appropriating and paying to the

said county sufficient funds from the treasury of the state of Nebraska to reimburse the said Scott's Bluff county the money so paid out and expended by the said county, and to argue the merits of said bill before the proper legislative committees, and to do all things needful and proper to procure the passage thereof and the money sought, and agreed to pay plaintiff on condition of success a very liberal fee and compensation for said services. All of which plaintiff agreed to do., Thereupon, at the instance and request of a majority of the county commissioners of said county of Scott's Bluff acting for and on behalf of said county, and in pursuance of the said agreement of employment, on or about the said 16th day of January, 1893, this plaintiff entered upon said employment, and went to the city of Lincoln, the capital of said state, where and when the legislature of the state of Nebraska was in session, and under and by virtue of said employment prepared and drafted said appropriation bill and appeared before the proper committees of the senate and house of representatives, and the various members of said bodies in public, and as attorney and agent of said county presented to said committees and members the merits, legality and justice of said bill, and procured and caused the said bill to be passed, appropriating. to said Scott's Bluff county for said purpose the sum of $7,495.73, and which bill, known as 'House Roll 278,' became a law of said state April 6, 1893, and the said sum of money was duly appropriated to and for the use and benefit of said Scott's Bluff county. That at all said times the said Scott's Bluff county and the officers thereof had full knowledge and notice of the services of plaintiff and of her claim to remuneration therefor, and so knowing of her said services and claim under the said contract, received and accepted the money so appropriated by said legislature to the said county; that the board of county commissioners of Scott's Bluff county, with the full knowledge of the said services of plaintiff and that by means thereof

the said appropriation was made, and of her said claim
to remuneration, in session accepted and received said
money so appropriated by the state as aforesaid, and all
the fruits of plaintiff's services in the premises, and
thereby ratified the agreement of employment between
the members of the board of county commissioners for
and in behalf of said county and the plaintiff as afore-
said, and the request of said two members of the board
to this plaintiff to perform said services. The said board
of county commissioners, in session as a board, have,
with full knowledge of the services of the plaintiff in the
premises, and that the receipt of said money from the
state as aforesaid was the fruit of plaintiff's services in
the premises, without which the said money would not
have been obtained by said county, appropriated and
distributed to the use of said county all the said money
received as aforesaid from the state; that in procuring
the passage of said act and the appropriation of said
money the plaintiff expended a large amount of time,
to-wit, about three months, and a large amount of money
in the defraying of her expenses, and her services in con-
nection therewith are of the value of $1,500 and more;
that plaintiff complied with all the conditions of said
contract of employment on her part to be performed,
but defendant wholly failed to comply with the condi-
tions thereof on its part, and have paid plaintiff nothing
thereon; that the sum of $1,500 is justly due and owing
to plaintiff from defendant, with interest thereon at the
rate of seven per cent per annum from April 6, 1893."

In the answer there were admissions of the trial of
the criminal case alleged in the petition, and that the
costs were as stated in the petition; also, that a bill or
act for the "relief of Scott's Bluff county" had been pre-
pared. It was pleaded that it was done by "Hon. Wm.
Neville," and was introduced by a member of the house
of representatives, and in the due course of legislation
became a law, and by it there was appropriated to the
purpose of the act the sum of $7,495.73, which was after-

wards received by the county. It was further pleaded in the answer: "Defendant further answering alleges that after the passage and approval of the said bill as aforesaid, and before the said money had been paid by the state to the defendant, to-wit, on the 20th day of June, 1893, the plaintiff herein filed a pretended attorney's lien with the auditor of public accounts of the state of Nebraska, claiming the sum of $1,500 as attorney's fees for procuring the passage of said bill through the legislature; that the treasurer of the defendant, the county of Scott's Bluff, was thereby compelled, in order to obtain said money, to sue out of the supreme court of the state of Nebraska a peremptory writ of mandamus at the cost of $369.62 to defendant, directing the auditor to pay the said sum of money over to defendant; that afterwards, on or about the 20th day of June, 1894, plaintiff filed a claim against the defendant with the board of county commissioners of the county of Scott's Bluff, which claim was wholly disallowed, for the reason that defendant was not and is not indebted to plaintiff in any sum whatever, from which disallowance this appeal is taken.

"6th. Defendant further answering denies that it ever at any time, or at any place in any manner, by its board of county commissioners, or any part of said board, in session or out of session, or by any means whatever acting for and on behalf of defendant, employed plaintiff, either orally or in writing, or any other way, to prepare said appropriation bill and present and argue the same before any of the committees of either house of said legislature on behalf of said defendant or any other purpose, and is not indebted to plaintiff in any sum whatever."

The reply was a denial of the new matter in the answer. A trial was had to the court, a jury being waived, and the defendant was given judgment. The plaintiff has prosecuted error to this court.

Evidence was introduced for plaintiff, but none on

part of defendant. The theory of the county in the trial court, gathered from the arguments in the brief filed, was and is now that there may have been some talk between the plaintiff and individuals of the county board with reference to a proposed application of the county to the state or the legislature for relief in the matter of the costs in the criminal case which was alluded to in the pleadings, but no negotiations or agreements with the board; that the plaintiff could not recover, for the reason the contract asserted by plaintiff was illegal and void, and the services rendered were in lobbying for the passage of the bill, and no recovery could be had for them. For the plaintiff it is argued, to the contrary, that the contract was made, was valid and enforceable. If not properly made with the board, there was in effect a ratification by the board; and there was an acceptance of the services and fruits and benefits thereof, and the county must pay for the work done by plaintiff. The application to the legislature, as is disclosed by the petition, was not predicated upon matter of claim which had a legal basis. It was said in *State v. Moore*, 40 Nebr., 854, in regard to this appropriation, that it was "in the nature of a donation." "A gift in fact." In regard to the services to be performed by the plaintiff, as we have seen, the petition stated she was to do all things needful and proper to procure the passage of the bill, and her fee was to be a liberal one, contingent, however, and dependent upon her procuring the passage of the bill. The plaintiff testified as follows:

"Q. You are the plaintiff in this case?

"A. Yes, sir.

"Q. You may commence at the beginning and tell what took place between you and the commissioners with reference to obtaining an appropriation from the legislature, and tell what occurred between you and the commissioners.

"A. In the spring or first of the year 1893, Elmer Morse, one of the board of commissioners, chairman of

the board of commissioners of Scott's Bluff county, I think he was, spoke to me about going to Lincoln and asked me if I thought I could procure the passage of a reimbursing bill. I told him I thought I could, but asked why Mr. Huffman, the county attorney, could not go. He said he thought Mr. Huffman—

"Defendant objects to what was said about Mr. Huffman. Overruled. Exception.

"He said he wished me to go because Mr. Huffman said he would have no influence with an independent legislature, while, if I wanted to go, he thought I could get a bill through the legislature. We talked about the matter of fee. He desired that if I went down that my expenses should all be paid, and said that while he would hardly be willing to pay a fixed amount, I could have a very liberal percentage if I secured the passage of the bill. There was no amount agreed upon. The contract between him and myself was that I should have a very liberal fee.

"Q. What if you did not obtain any appropriation?

"A. I was not to receive anything. Mr. Decker agreed to the same thing."

One of the county commissioners testified as follows:

"January, 1893, I made a verbal contract with the plaintiff, as an attorney and agent of Scott's Bluff county, Nebraska, to procure the passage of a bill by the legislature of Nebraska, for the purpose of reimbursing Scott's Bluff county for the expense incurred in the trial of one George S. Arnold for the crime of murder. Said plaintiff was to prepare said bill, procure its introduction to the legislature, to argue the merits of said bill as agent and attorney of said Scott's Bluff county, Nebraska, and to do whatever was necessary to secure the passage of said bill.

"Q. For what compensation was the plaintiff in this case to carry out this contract on her behalf?

"A. There was no specified sum mentioned. If the bill passed for only a part of the original sum sought,

she was not to receive as much; but in any event she was to receive a very liberal fee in the event of success, which fee to be proportioned to the amount secured. The plaintiff was to pay all expenses, the county not to be held liable for any expense or compensation in the event that no amount sought in the bill was secured. On account of plaintiff's taking the case conditionally she was to receive a larger fee in case she succeeded in securing the passage of the bill mentioned than she would have received if Scott's Bluff county had guarantied her expenses or a fee in any case."

A member of the senate at the time the appropriation bill referred to herein was passed testified as follows:

"Q. Do you know the amount of work and labor that Mrs. Richardson actually expended in the matter of procuring a favorable report from the committee of claims in the houses, and also the same committee in the senate, and in procuring the passage of said bill through both branches of the legislature?

"A. I know she was there when the session opened, and was there continuously until after the bill was passed and approved by the governor and became a law, as far as was necessary for the legislature and its approval was concerned, which was very near the close of the session, and that she worked continuously for that bill. I know that she went to every member of the senate time and time again in working for the bill, and I also know that the sentiment of the senate was against the bill until turned the other way by her."

A party who was a member of the house when the bill passed stated in testimony in this case:

"I myself with other members was asked to listen to her narrative of the case and circumstances very early in the session, I think the first week—and it continued until the passage of the bill, the date of which I don't remember, but it was very late in the session. She was constantly interviewing myself and other members of the house by urging us to look into the merits of the bill

and in advancing her arguments to show the merits of the case.

"Q. State if you remember any of the difficulties and adverse report that had to be overcome to get the bill through.

"A. Why, the committee on claims reported once, the first time that they reported to allow one-half of the claim. She fought the report after it came back to the house and got it recommitted. The committee were not satisfied. The members of the committee expressed themselves dissatisfied with her refusal to take one-half of the claim, and finally reported it back to be indefinitely postponed. She then came upon the floor and mustered members enough to defeat it—the report for indefinite postponement—and had it ordered to the general file, and later she secured enough members to call it up out of its regular order, and considered it in open house, and finally secured the passage of the bill for the full amount asked.

"Q. Speaking from your experience as a legislator, what would you say about the efficiency of her work and the legality of her means employed?

"A. It was the shrewdest piece of work I ever saw done in the way of legislation, and the fact of her being a woman created a great deal of comment. She was the most persistent worker I ever saw, and the argument she made both before the committee and the members individually were such as would have done credit to any attorney in the state."

In regard to contracts of the nature of the one which is herein asserted by plaintiff it was stated in *Wood v. McCann*, 6 Dana [Ky.], 366, quoted in Cooley, Constitutional Limitations [6th ed.], 163, 164, and in an article by Samuel Maxwell in 28 Am. Law Review, p. 211, on the subject of "Necessity for the Suppression of Lobbying": "A lawyer may be entitled to compensation for writing a petition, or even for making a public argument before the legislature or a committee thereof; but the

law should not help him, or any other person, to a rec-
ompense for exercising any personal influence in any
way in any act of legislation. . It is certainly important
to just and wise legislation, and, therefore, to the most
essential interests of the public, that the legislature
should be perfectly free from any extraneous influence
which may either corrupt or deceive the members or
any of them." The contract declared upon, and espe-
cially as shown by the evidence, was both specific and
general in its terms relative to what was to be. done by
the plaintiff; and, moreover, it provided for a contin-
gent fee—an indefinite sum, but a liberal one, if the act
passed, nothing if it failed. The contract, if ever made,
was vicious and illegal, and there could be no recovery
under it, nor as upon an implied contract, nor upon a
*quantum meruit.* See *Wood v. McCann, supra; Marshall
v. Baltimore & O. R. Co.,* 16 How. [U. S.], 314; *Coquillard
·v. Bearss,* 21 Ind., 479; *Harris v. Roof,* 10 Barb. [N. Y.],
489; *Weed v. Black,* 2 MacArthur [D. C.], 268; *Chippewa
V. & S. R. Co. v. Chicago, S. P., M. & O. R. Co.,* 75 Wis.,
224, 44 N. W. Rep., 17. It was decided in the cases just
quoted that a contract, the nature of the one in suit,
which provided for contingent fee or compensation is
illegal and void, because such fee or compensation is
a "direct and strong incentive to the exertion of not
merely personal but sinister influence upon the legis-
lature." It follows that the judgment of the district
court must be

AFFIRMED.