**GRAVES & HOUTCHENS v. DIAMOND HILL INDEPENDENT SCHOOL DIST. (No. 10071.)**

(Court of Civil Appeals of Texas. Fort Worth. June 10, 1922.)

1. **Schools and school districts ⬦55—Trustees of district held not empowered to employ counsel and expend funds to influence legislation.**

While the trustees of an independent school district may employ counsel where the interests of the district require assertion or defense in the courts, they have no authority to employ counsel and expend funds in an attempt to secure or defeat legislation.

2. **Contracts ⬦126—Agreement with school district to influence legislation held invalid as a "lobbying" contract.**

An agreement by trustees of an independent school district to pay plaintiffs certain compensation if they would "accomplish the defeat, if possible, of a certain proposed legislative bill which was then contemplated" affecting the district is invalid as contrary to public policy, and violative of Pen. Code 1911, art. 196, such contract being a "lobbying" contract denounced by the statute; the term "lobbying" signifying the addressing or soliciting of members of a legislative body with the purpose of influencing their votes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lobby.]

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Graves & Houtchens against the Diamond Hill Independent School District. From a judgment dismissing plaintiffs' suit, they appeal. Affirmed.

Samuels & Brown, of Fort Worth, for appellants.

Rhineheart Rouer and Gillis Johnson, both of Fort Worth, for appellee.

CONNER, C. J. Appellants, Graves & Houtchens, sued appellee, the Diamond Hill Independent School District, to recover a balance of $890 alleged to be due upon a contract of employment to secure the defeat of a certain bill then pending before the Legislature of the state of Texas, which, it was alleged, would, in the event of its passage, deprive the district of its existing liability to raise large amounts of funds by taxation necessary to a successful continuance of the public school in the district. Among other allegations, the plaintiffs averred that:

"On or about December 15, 1918, the defendant, acting by and through its duly authorized board of trustees, entered into a valid and binding contract whereby it employed the plaintiffs herein to render certain legal services for said school district, which legal services consisted of the undertaking on the part of the plaintiffs herein, to accomplish the defeat, if possible, of a certain proposed legislative bill which was then contemplated to be presented before the Thirty-Sixth Legislature of the state of Texas. * * * That in order to defeat said bill plaintiffs wrote numerous letters and addressed them to the members of the Thirty-Sixth Legislature, and to each of them, * * * but, on account of the fact that the senators had gained knowledge, and did thereafter come into possession of knowledge through the plaintiffs' efforts and influence, and through the efforts and influence of those under plaintiffs' direction and instruction, said senators lost all interest in said bill, and permitted the same to die upon the calendar. * * * These plaintiffs further say that, had it not been for their influence and efforts, * * * said representatives and senators would have voted favorably in each instance upon said bill, and the same would have become a law."

The defendant answered by a general demurrer, a general denial, and also pleaded, in effect, that the alleged contract was ultra vires, against public policy, and void. The defendant further specially pleaded in abatement that the defendant corporation was an independent school district, having a scholastic population of less than 500, and that plaintiffs had not appealed from the refusal of the board of trustees to allow the claim declared upon to the county superintendent and other school authorities.

The court upon the trial sustained the defendant's general demurrer, and, plaintiffs declining to amend, the suit was dismissed,

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and from the judgment of dismissal, this appeal has been duly prosecuted.

[1, 2] Aside from the question of whether the petition, as against a general demurrer, was fataly defective because it failed to show that an appeal had been taken to the county superintendent, the state superintendent, to the state board of education, or to any other supervising educational person or body, we think the court's judgment must be sustained, on the ground that the contract of employment, as alleged, was ultra vires, against public policy, and void. While it is doubtless true that there is power in a board of trustees of an independent school district to employ counsel and pay out of the public funds of the district a reasonable fee in cases where the interests of the district require assertion or defense in the courts of the county, we find no authority, after careful search, either expressed or implied in the statutes of this state, to employ counsel and expend the public funds of the district in the attempt to secure or defeat legislation. But, if any character of employment to secure such end under any supposable state of facts may be held to be authorized, the plaintiffs' petition herein presents no such facts.

Article 196 of our Penal Code thus reads:

"That if any paid or employed agent, representative or attorney of any person, association or corporation, shall, at any place in this state, after the election and during the term of office of any member of the Legislature of this state, privately solicit the vote, or privately endeavor to exercise any influence, or offer anything of value or any other inducements whatever, to any such member of the Legislature, to influence his action concerning any measure then pending, or thereafter to be introduced. in either branch of the Legislature of this state, he shall be deemed guilty of lobbying."

Subsequent articles of the Code assess adequate penalties for a violation of the article quoted.

The plaintiffs' petition in this case, as we construe it, substantially brings it within the spirit, at least, of the article. The obvious and avowed purpose of the agreement was to prevent the passage of a bill pending before the Legislature, regardless of the effect that it would have upon the general public. The language of the petition shows that the inducement existed to exert every effort at the command of counsel to use improper influences if necessary to accomplish their avowed object. The language of the petition is "to accomplish the defeat, if possible, of a certain proposed legislative bill." The fee claimed was not insignificant, and, however honest and sincere the plaintiffs may have been—and their honesty and sincerity is not questioned in this case—the temptation existed to exercise improper influences upon individual legislators, and the

policy of law generally is to preclude such a possibility.

"Contracts to procure legislation, either by the passage of statutes or of ordinances, are generally held void on the ground of public policy and the same rules apply to contracts between a municipality and another to procure the enactment of certain legislation supposed to be beneficial to the municipality. Thus, a contract with a municipality to draft a bill, have it introduced in the Legislature, explain it to committees and to receive no compensation in the event it is not passed, is vicious, illegal, and void."

In the case of Richardson v. Scotts Bluff County, Supreme Court of Nebraska, 59 Neb. 400, 81 N. W. 309, 48 L. R. A. 294, 80 Am. St. Rep. 682, the plaintiff, who was an attorney duly licensed to practice law, entered into a contract with the defendant, Scotts Bluff County, to prepare a bill and present it before the Legislature of Nebraska, the effect of which was to reimburse that county in the sum of $7,016.01, which amount was expended by said county in the prosecution of a murder case, and which amount the county could ill afford to spend in such a manner. The plaintiff successfully accomplished the object of her employment. The court, speaking through Chief Justice Harrison, said:

"It is certainly important to just and wise legislation, and therefore to the most essential interests of the public, that the Legislature be perfectly free from any extraneous influence which may either corrupt or deceive the members or any of them. The contract declared upon, and especially as shown by the evidence, was both specific and general in its terms relative to what was to be done by the plaintiff, and, moreover, it provided for a contingent fee—an indefinite sum, but a liberal one, if the act passed; nothing, if it failed. The contract, if ever made, was vicious and illegal, and there could be no recovery under it, nor as upon an implied contract, nor upon a point of merit."

In the case of Colusa County v. Welch, 122 Cal. 428, 55 Pac. 243, an injunction was sought by the county to prevent the treasurer paying a warrant for $1,000, which amount was alleged by one Sprague to be due him by virtue of a contract he had with the county "to secure by means of personal solicitation, and by means of private interview with members of the Legislature of California, and by means of lobbying, the defeat of said senate bill." The court, speaking through Chief Justice Searls, said:

"The term 'lobbying' has a well-defined meaning in this country, and signifies to address or solicit members of a legislative body in the lobby or elsewhere with the purpose of influencing their votes. * * * We think the allegations show that the alleged contract was void as against public policy. Waiving this, however, and we think that the contract alleged in the complaint was in excess of any

powers conferred upon the Board of Supervisors, and hence void. * * * In the case at bar the supervisors had no duty in the premises to perform. They had no authority to influence, or to employ others to influence, the Legislature in the action which, in its wisdom, it should see fit to take. If the board could do so in the present case, then, by. parity of reasoning, it could do so in all matters of revenue, and in all cases which might indirectly affect the interests of the county. If the board of a given county may exercise such authority, then like boards of all other counties may exercise like authority in like cases, and there is a possibility of a corps of attorneys being always in attendance upon sessions of the Legislature to influence the action of members in matters confided to the judgment of the latter. There is no such authority given, either directly or by implication, to boards of supervisors, and the attempt to exercise it by the board in the case at bar was null and void."

In the case of Chippewa Valley & S. Ry. Co. v. Chicago, St. P., M. & O. Ry. Co., 75 Wis. 224, 44 N. W. 17, 6 L. R. A. 601, the court, in speaking of contracts of the kind, quotes this language from Tool Co. v. Norris, 2 Wall. 45, 17 L. Ed. 868:

"These have been uniformly declared invalid, and the decisions have not turned upon the question, whether improper influences were contemplated or used, but upon the corrupting tendency of the agreements. * * * It is sufficient to observe, generally, that all agreements for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question, whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements; and it closes the door to temptation, by refusing them recognition in any of the courts of the country."

These principles are reasserted by the same learned justice in Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539.

In the case of Mills v. Mills, 40 N. Y. 543, 100 Am. Dec. 535, a contract was made in words and to the effect as follows:

"That he would give all the aid in his power, and spend such reasonable time as may be necessary, and generally use his utmost influence and exertions to procure the passage into a law of the said bill heretofore introduced into the senate of the state of New York."

The court said:

"It is not necessary to adjudge that the parties stipulated for corrupt action, or that they intended that secret and improper resorts should be had. It is enough that the contract tends directly to those results. It furnishes a temptation to the plaintiff, to resort to corrupt means or improper devices, to influence legislative action. It tends to subject the Legislature to influences destructive of its char-

acter, and fatal to public confidence in its action."

In the case of Lyon v. Mitchell, 36 N. Y. 235, 93 Am. Dec. 502, the court, citing the case of Marshall v. Baltimore & Ohio Ry., 16 How. (U. S.) 314, 14 L. Ed. 953, said:

"That where an agent contracts to use or does use secret influences to affect legislative action, the contract respecting it is void. * * * 'Public policy and sound morality do, therefore, imperatively require that courts should put the stamp of their disapprobation on every act, and pronounce void every contract the ultimate or probable tendency of which would be to sully the purity or mislead the judgments of those to whom the high trust of legislation is committed.' * * * Personal solicitation" of legislators or of judges "is not the lawful subject of a contract. The apprehension that considerations other than those of a high sense of duty and of the public interests, may thus be brought to influence their determination, forbids this employment."

In the recent work of Williston on Contracts, vol. 3, § 1727, the author thus states the ruling:

"An agreement by a legislator to exercise his judgment in a particular way is not binding at law. His promise, if without consideration, is not binding for that reason, and if he bargains for consideration it is illegal. A contract with one who is not a legislator, to induce legislators to vote in a particular way, is open to similar objections if the methods of inducing legislative action are improper. It has been said by the Supreme Court of the United States, in regard to the presentation to. Congress of a claim against the United States: 'We entertain no doubt that in such cases, as under all other circumstances, an agreement express or implied for purely professional services is valid. Within this category are included, drafting the petition to set forth the claim, attending to the taking of testimony, collecting facts, preparing arguments, and submitting them, orally or in writing, to a committee or other proper authority, and other services of like character. All these things are intended to reach only the reason of those sought to be influenced. They rest on the same principle of ethics as professional services rendered in a court of justice, and are no more exceptionable.' On the other hand, personal solicitation of individual members is a method which cannot be made the subject of contract."

In a note to this section, the author lists numerous authorities in support of the concluding lines of the section, reading that "personal solicitation of individual members is a method which cannot be made the subject of contract."

We approve the rulings made by the authorities from which we have quoted, and are of the opinion that, in accordance therewith, the plaintiffs' petition is fatally defective, and that the judgment of the lower court in sustaining the general demurrer thereto must be affirmed; and it is so ordered.