

# THE ATTORNEY GENERAL
# OF TEXAS

**JOHN L. HILL**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

July 25, 1973

The Honorable Dr. J. W. Edgar
Commissioner of Education
Texas Education Agency
201 East Eleventh
Austin, Texas 78701

Dear Dr. Edgar:

Opinion No. H- 70

Re: Purchase of insurance to
protect school trustees from
costs of litigation growing
out of discharge of official
duties, and related questions.

Your request for our opinion states as background information that members of boardsof trustees of independent school districts have been sued individually for actions taken by them in their capacity as board members. You give a specific example of one case involving the use of corporal punishment administered pur suant to Texas law, in which a Federal Court ultimately determined the suit to be without merit and dismissed it but, nevertheless, the individual board members were put to the expense of providing their own defense. You state that there is a growing number of claims against such officers which discourages responsible persons from seeking service on school boards.

You ask two questions:

(1) May a school district purchase liability insurance coverage (a) to protect its trustees from costs of defending litigation brought against them individually for acts or omissions committed in the good faith discharge of their official duties; and/or (b) to protect school board members from liability, if any, imposed on them for damages resulting from an action, affirmative or omission, occasioned while in the performance of duties or responsibility as a school trustee?

(2) Where liability insurance protection individually of school district trustees legally is impermissible, can they individually rely solely on governmental immunity without defense?

The questions you raise are difficult to answer because of the variety of situations in which trustees may be sued for actions taken by them in their capacity as board members.

(1) They may be sued by themselves to recover on a cause of action based in tort for which the school district, if a private person not shielded by governmental immunity, might be liable, as for example, for injuries inflicted on a student through the negligent administration of corporal punishment (exempted specifically from the Texas Tort Claims Act by § 14(10), Article 6252-19, V. T. C. S.

(2) They may be sued as defendant on a cause of action for which the school district itself would be liable, as for instance, injuries growing out of the operation of a school bus or other motor-driven vehicle for which the Tort Claims Act specifically abrogates the doctrine of governmental immunity. Article 6252-19, § § 3 and 4, V. T. C. S.

(3) They may be sued in situations where no damages are sought ( or no damages would be recoverable from the school board), as for example a challenge to dress codes and other similar school policies.

(4) They may be sued where no damages are sought from them as in civil rights suits brought under 42 U. S. C. § 1983.

(5) They may be sued as individuals as, for instance, for slander, assault, or other tort committed as part of and growing out of their function as members of the school board but not within the scope of their agency where the school board would not be involved under any circumstances.

(6) They may be sued under circumstances which would constitute a wrong as to the school board, as for example, abusing their positions to their private profit, usurping an office, etc.

There surely are other situations. It must be remembered that any suit may be spurious and the board members may be entitled to a judgment or dismissal as a matter of law.

Prior to the adoption of the Tort Claims Act, opinions had been issued by this office holding that a school board could not spend school funds to purchase insurance covering the operation of school busses. Attorney General Opinions O-1418 (1939); O-6182 (1944); letters from Attorney General Waggoner Carr, December, 1963, and Crawford Martin in May, 1968, to Dr. J. W. Edgar.

It has long been the position of this office that a school district may retain and pay attorneys to protect its interests in Court.   In a May 11, 1931, letter opinion found in the Attorney General's Letter Opinion Collection (book 321 at page 313) and addressed to the State Superintendent of Public Education, the Honorable Scott Gaines, then an Assistant Attorney General, advised:

> " . . . [T]rustees of school districts have the implied
> authority to contract the employment of attorneys to
> represent them and their school districts in legal
> proceedings respecting school affairs, and the author-
> ity exists to pay such attorneys reasonable compen-
> sation for their services out of the local maintenance
> fund of the district. "

Also see Arrington v. Jones, 191 S. W. 361 (Tex. Civ. App. ,      , no writ); Chrestman v. Tompkins, 5 S. W. 2d 257 (Tex. Civ. App. ,      , no writ); Harding v. Raymondville Ind. School Dist. , 51 S. W. 2d 826 (Tex. Civ. App. ,      , writ dis'm. , w. o. j. ); Stewart v. Newton Ind. School Dist. , 134 S. W. 2d 429 (Tex. Civ. App. ,      , no writ); Carlile v. Bradley, 223 S. W. 2d 564 (Tex. Civ. App. ,      , no writ); 51 Tex. Jur. 2d, Rev. , Part 1, Schools, § 97; Anno:  75 ALR2d 1339 (1961).

But the authority of school trustees to employ attorneys is limited to those situations where the legitimate interests of the district - - not merely the personal interests of the trustees - - require assertion or defense.  See Attorney General Opinion O-2130 (1940) where payment of attorneys fees charged for resisting quo warranto suits directed against the former trustees was disapproved.  Also see Graves & Houtchens v. Diamond Hill Ind. School Dist. , 243 S. W. 638 (Tex. Civ. App. , 1922, no writ); State v. Averill, 110 S. W. 2d 1173 (Tex. Civ. App. , 1937, writ ref'd. ); City of Del Rio v. Lowe, 111 S. W. 2d 1208 (Tex. Civ. App. , 1937, reversed on procedural point, 122 S. W. 2d 191); Anno: 130 ALR 736 (1941).

Our recent Letter Advisory No. 24 (1973) concerned a proposed statute to permit counties to provide legal representation to county officials and employees if the suit against them involved "any act of the official or employee while in the performance of public duties. "  Citing City National Bank of Austin v. Presidio County, 26 S. W. 775 (Tex. Civ. App. , 1894, no writ), among others, we said that public money could not be spent to defend private interests; that suits might be only nominally against individuals

when they were really designed to obstruct or control the legitimate performances of official duties; and that there was no constitutional prohibition against the use of public funds to defend a county's interests in a legal contest, even if the county was not named as a party to the suit. We went on to say that, if only the private interests of the defendant officer or employee are at stake, no defense could be provided, even though  the act which precipitated the suit occurred while the officer or employee was ostensibly engaged in the performance of public duties.

Indemnification of municipal officers against liability incurred by reason of an act done by them in the bona fide performance of official duties has been described as a legitimate municipal function for which public funds may be spent.  City of Corsicana v. Babb, 290 S. W. 736 (Tex. Comm., 1927).

The Babb holding was restricted by City of Del Rio v. Lowe, supra, (a case where city commissioners were indicted for felonious misconduct in office) to situations "where the city commissioners [do not] have a direct personal interest in the use of city funds for their own defense" and "where the city is [not] the injured party, as a result of the officer's acts."

The Texas Education Code contains no specific authorization for the purchase of liability insurance covering trustees; however, § 20.48 does provide, in pertinent part:

"(a)  The public free school funds shall not be expended except as provided in this section.

" . . .

"(c)  Local school funds from districts taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for state and county funds . . . for the payment of insurance premiums, . . . and for other purposes necessary in the conduct of the public schools to be determined by the board of trustees, . . ."

We are of the opinion that it is no longer possible to conclude as a matter of law that it is an unreasonable or unnecessary expenditure of public funds to buy insurance against potential legal costs, expenses or liability that might be incurred by school districts or their representatives who act in a public capacity.

Even though immunity of the district may be complete, it is still necessary that governmental bodies and officials enjoying immunity defend themselves in courts of law when their invulnerability is tested. Immunity is an affirmative defense which public officers must raise by pleadings in the State courts under Rule 94 of the Texas Rules of Civil Procedure and in the Federal courts under Rule 8 of the Federal Rules of Civil Procedure. If the defense is not presented, a default judgment is risked. See 51 Tex. Jur. 2d, Rev., Part 1, Schools, § 100.

Where a Texas governing body believes in good faith that the public interest is at stake, even though an officer is sued individually, it is permissible for the body to employ attorneys to defend the action. City National Bank of Austin v. Presidio County, supra. The propriety of such a step is not made dependent upon the outcome of the litigation, but upon the bona fides of the governing body's motive.

School districts are not authorized to purchase insurance coverage for their officers and employees "as an element of employee compensation." If purchased at all, insurance must be purchased for the purpose of protecting a public interest, not a private one - - though private interests may be incidentally benefited. Article 3, § 51, Constitution of Texas. If school officers, are subjected to the risk of legal expense and legal liability, the risk is a public - - not merely private - - concern which the school board may legitimately seek to reduce by either expending funds for lawyers to defend the suit or by purchasing insurance to avoid the need for such expenditures.

It is our opinion that insurance to protect against the expense of litigation and insurance against liability must be treated differently. Even though a governmental body may be immune, nevertheless it may be sued and its immunity put to the test. Thus, despite immunity, there is the risk of legal expense and this is a proper risk for insurance.

On the other hand, so long as immunity exists, there is little risk of liability and to provide insurance funds to discharge the liability of an individual trustee would be a grant of public money or aid of an individual, in violation of Article 3, §§ 51 and 52 of the Constitution. This would be particularly true where the insurance premiums would be determined retrospectively or based on experience, shifting the burden to the insured. Where, however, liability insurance to respond for the trustee's liability should be a legitimate expense if made to depend on abolition or abrogation of the immunity doctrine.

In answer to your questions, therefore, it is our opinion that a school district may purchase insurance to protect itself (and its trustees) from the cost and expense of defending litigation brought against them individually for acts or omissions committed by them in the good faith discharge of their official duties (situations 1, 2, 3 and 4, above) but not insofar as the litigation is directed against the trustees for acts personal to them in which the school district has no interest or in which the school district may have an adverse interest. (situations 5 and 6)

Our answer to your second question is that the school district may purchase insurance to indemnify its trustees from awards of damages only where the district itself was or might have been held liable for the same damages.

Governmental immunity will not shield any defendant without his raising it as a defense through a proper written answer or motion filed in the suit.

## SUMMARY

The trustees of a school district are authorized by the Education Code to purchase insurance to provide indemnity to the district against the costs and expenses of all litigation and against an award of damages where the district is not immune, and such

purchase does not violate the Constitution if the same indemnities are extended to the district trustees. The school board may not purchase insurance to indemnify its trustees in situations where it is not itself exposed, actually or potentially to a similar liability.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee